## ORDWAY v. HAYNES.

An engraving may be used as a chalk before the jury, to illustrate the positions of counsel or the statements of a witness, as well as a sketch made by pen or pencil or in any other way, unless the court can see that there is something about it that is calculated to mislead the jury.

But if such engraving is offered as having been taken from a medical book, or as contained in such book, or as devised or drawn by any distinguished physician, then it should be excluded, as any such suggestions or remarks would tend to give to such sketch or chalk an undue importance in the minds of the jury.

It is ordinarily to be left to the discretion of the judge who tries the cause, whether any plan or sketch may be shown to the jury as a chalk.

Where a witness on a former trial made a different statement, in relation to a certain fact, from that which he has given upon the present trial, and in explanation of the statement first made he now says it was "a slip of the tongue," he may be inquired of, on cross-examination, as to all the circumstances attending his first statement, not only as bearing upon the question of witness's memory, but also as bearing upon his veracity.

The original writ was dated Aug. 30, 1864, a writ of review, Nov. 28, 1866.

The action was case against the defendant as a surgeon, for alleged malpractice in not properly and skilfully setting and curing plaintiff's fractured leg; which injury occurred to plaintiff on the 20th of May, A. D. 1863. The plaintiff's writ contained two counts. The ad damnum, $10,000. Defendant's plea, the general issue. The verdict having been in favor of plaintiff, he now moves that the same be set aside, and for a new trial for error in the rulings of the court. In opening

the case for the said Ordway, to the jury, his counsel stated that, by reason of and as the result of the alleged malpractice of the surgeon, the lower portion of said fractured bone was pushed up, and lapped by the upper portion of the fractured bone, thereby causing a shortening of the limb. And he offered to exhibit to the jury an engraving in a medical book, as a chalk to illustrate his meaning. The counsel for the defendant objected to this mode of illustration, and the court sustained the objection. To which ruling the plaintiff excepted. The plaintiff called one Amos Dodge as a witness, who testified that he was foreman of the jury upon the former trial of this case ; and testified that Haynes then swore that on the 20th of September, 1863, he visited Ordway, took off the splints and bandages from his leg, took hold of the leg, put it in a perpendicular position, moved it up and down and sideways, and that he pressed upon it with all the force he could, and it made no impression upon it ; and that he thought said Haynes said he could not spring it (meaning the *callus* formed at the place of fracture). This testimony of Dodge was substantially sustained by Dr. Conn. Afterwards, Dr. Haynes, upon examination in chief, among other things, said, On the 20th of September I took the limb by the heel and carried it up at nearly right angles with the body ; I did this two or three times ; then lifted it up and carried it from side to side, raising it a foot or so. After doing that, I took hold of the leg a little above and below the fracture, and used sufficient force to find out whether it was strong enough to take the splints off. In explanation of his testimony, used at the former trial, witness said, I did not use my entire force, for I think I could have broken his leg. While in further discussion by the counsel upon the witness's right to explain his former testimony, Dr. Haynes, then being on the stand, interrupted the examination, saying, " I think my testimony was, ' I used all the force I could,' but it was a *slip* of the *tongue.*" Upon cross-examination by plaintiff, he was asked whether or not, after he had testified upon the former trial, all the medical experts, testifying after him, and in his presence, were severally inquired of as to their opinion of the strength of the *callus,* based upon the said testimony of Dr. Haynes concerning the said experiment and test, and whether he then, or subsequently during that trial, offered to correct or explain the expression now suggested to be " a slip of the tongue." This question was objected to by defendant. The court ruled it to be admissible for the purpose of showing the memory of the witness, and not important for other purposes. To this ruling plaintiff excepted.

Plaintiff complained of some irregularities or improprieties between the officer who had charge of the jury, with one or more of the jurors, before their verdict was rendered into court. Also, that the officer did not in good faith communicate to the jury the order of the court given to him as to the hour or time when he was authorized to dismiss the jury and adjourn the court. The verdict of the jury having been made up just before 12 o'clock on Saturday night, on the next Monday in the forenoon, after the court was opened, and before the verdict of the jury was read, the counsel of the plaintiff suggested to the court the afore-

said irregularities between the officer and jury, and requested the court to inquire of the jury, before their verdict was read, as to the nature and extent of such misconduct. This request was declined by the court. The verdict was received and recorded.

The court, however, authorized the plaintiff to take the testimony of the officer, and any other testimony thought by them pertinent, as to the aforesaid misconduct or irregularities, with notice to the opposite party. Depositions have been duly taken pursuant to such order and submitted to the court.

The questions of law were reserved.

*George & Sanborn,* for Ordway.

I. The ruling of the court, excluding the engraving as a chalk, was objected to as illegal, and the court excluded it because of its illegality. There was no question of discretion raised or passed upon by the court, but the simple question of the illegality of an engraving for the purpose suggested. The practice and the necessity for the use of such modes of illustration, particularly in cases like that under consideration, are very common, and would seem very palpable. In *Tucker* v. *Henniker,* 41 N. H. 317, where the rights and duties of counsel are very fully considered, the propriety of such illustration seems conceded.

II. As to the second point, the defendant's testimony at the last trial was in direct and vital conflict with his testimony previously given. He attempted to explain it on the ground of an alleged "slip of the tongue." As bearing, therefore, upon the question of his truthfulness and not of his memory, and upon the further question as to the reasonableness of his explanation, all the circumstances surrounding his first testimony were competent and proper to be shown; and if, as the case finds, the defendant testified upon the former trial that he used all the force he could, and in this trial that he did no such thing, we claim it to be competent for all purposes to show that his former testimony was in his presence read to experts as the basis of medical opinion, and no explanation like that now attempted was suggested.

We claim that this testimony is competent, first, as an admission of the party without regard to his subsequent testimony; second, that it is competent to show that the defendant has made an entire change of base in his defence; third, that the defendant wilfully misstates his former testimony,—all of which we conceive to be entirely disconnected from the memory of the witness, for which the court ruled the testimony admissible, and very important for other purposes for which the court ruled the testimony inadmissible or unimportant.

III. As to the third point, the active influence of officers having charge of a jury upon the action of a jury, is one too common in practice and too serious in its results not to require the careful scrutiny of the courts. In theory of law, the officer is not allowed to speak to the jury except to ask them if they be agreed, or to communicate with them except by order of the court. In this case the officer not only

violated his oath by conversations and communications with the jury not sanctioned by the court, but, in the place of information directed to be given, stated to them not only what was false in itself, but false in its inferences. We claim that the jury were thus influenced to a decision which was not in accordance with their unbiassed judgment; and if the conduct of the officer tended in this direction, it is sufficient reason for setting aside the verdict.

The plaintiff moved for a full investigation of these irregularities before the verdict was taken, and that the jury be inquired of as to the extent of the misconduct, in which we claim the court erred in declining; and if the court above shall decide that the irregularities, as shown by the officer and the other testimony, do not sufficiently prejudice the plaintiff's case to justify the setting aside of the verdict, we ask that a commission may be appointed by this court to take the testimony of the jurors, and exhibit the misconduct of the officer and its effect upon the jury to its full extent. We deem the granting of this request due alike to the cause of public justice as well as to the interests of our client, in order that the retaining of deputy sheriffs may not become an essentiality to the successful trying of jury causes in this county.

*Minot, Tappan & Mugridge,* for Haynes.

I. The offer upon the part of counsel to " illustrate " his case to the jury by the drawing or plate in a medical book, was nothing more or less than an attempt, by indirection, to put before the jury the contents of the book, which would be inadmissible. 1 Green. Ev., sec. 140, and note; *Collier* v. *Simpson,* 5 C. & P. 73; *Jameson* v. *Drinkald,* 12 Moore 148.

He might with equal propriety have read from the book pages of its text, and called this reading a " chalk " offered for the purpose of an illustration, as to have exhibited a pictorial representation of that text with the same view. The legal reasons which sustain the one objection would the other. Because the plates or drawings were offered as a " chalk," they were none the less improper. Incompetent evidence will be rejected by the court, by whatever name it may be christened when presented. Again, the exhibition of a " chalk" to the jury, under any circumstances, is a matter within the control of the court in the exercise of its discretion; and if the court, in the exercise of that discretion, refuses to allow such a presentation, such refusal cannot be made the subject of a legal exception.

II. The original plaintiff offered the testimony of Amos Dodge and Dr. Conn to show that at a former trial Dr. Haynes said that in applying certain tests to the fractured limb, on the 20th of September, " he used all the force he could," &c. Dr. Haynes, at the second trial, again stated what the course pursued by him, in applying this test on the 20th of September, was, saying that " he used sufficient force to find out whether it was strong enough to take off the splints." He said that he did not, as a matter of fact, use his " entire force," but admitted that he did say, on the former trial, that he " used all the

force he could," but said that this particular expression "was a slip of the tongue." Counsel for Ordway then proposed to ask Dr. Haynes whether, "after he had testified upon the former trial, all the medical experts, testifying after him, in his presence were severally inquired of as to their opinion of the strength of the callus, based upon his testimony, and whether he, during the former trial, offered to correct or explain his testimony in this particular." The court allowed the question to be put, as bearing upon the accuracy of his recollection, but ruled that it was not important for other purposes. One ground stated by counsel for Ordway, in their brief, upon which this evidence is claimed to be admissible, was, that it showed that Dr. Haynes "wilfully misstated his former testimony."

We say, with reference to this suggestion, that there was no denial upon the part of Dr. Haynes that he did say, upon the former trial, that "he used all the force he could," &c. The case distinctly finds that there was no disagreement or conflict between him and the plaintiff's witnesses as to what he said on that trial, but a voluntary admission of the fact proved by Dodge and Conn. Therefore, an answer to the question ruled out could not have shown any misstatement in this particular.

It is suggested that an answer to these questions would show "an entire change of base" upon the part of the defence in the case.

We do not know of any rule of law by which a party is compelled, in any case, to fight it out upon any particular line; but we understand he is at liberty, in different trials, to make such changes in his plan and method of attack and defence as he may elect, which the evidence may warrant; and he is not to be in any way prejudiced thereby. Such changes in the method of trial are not competent to be shown in evidence, and if the questions under consideration were put with that view, as is claimed, they were properly ruled out. We deny that there was any attempt made to change, in the least, the line of defence on the second trial, but only to have the witness explain the meaning of a certain doubtful expression used by him on the former trial, and which was sought to be perverted and misconstrued.

But it is claimed further that the answers to these questions would have been competent to prove an admission of the party.

Counsel for the plaintiff has not explained in his brief the precise nature of the admission of Dr. Haynes, sought to be proved in the way suggested. But we infer that the proposition was, substantially, to show the opinions of all the medical experts, based upon his testimony referred to, and that, having heard those opinions, and not then offering to correct the expression in question, he has admitted something; and the question at once arises, What has he admitted? Is it the correctness of the opinion given by the medical experts? This cannot be said. Is it that he testified in the particular way suggested? That he does not deny. Or is it to be claimed that he acquiesced in or admitted any particular construction or application of his language, or bound himself to any particular position, that the counsel who argued the case took before the jury upon this testimony? This cannot be said,

because this construction was given, and position was taken, after the evidence was closed, and when he had no opportunity to correct or explain anything that was doubtful or ambiguous in the testimony. The law does not imply an admission against a party under any such circumstances. 1 Green. Ev., sec. 197, and authorities cited. The language used by the witness, in the first trial, was clearly ambiguous, or at least susceptible of perversion in its interpretation. The witness might be interpreted as saying that he used all the force that he *properly* and *prudently* could, or all the force he could under the circumstances of the case, in testing the limb; which was all he ever intended should be understood by his testimony. Or such a construction might be put upon his words (as actually was by the counsel for the plaintiff in argument) as to make the witness say that he used the *greatest amount of physical strength that he was possessed of, and was capable of using*, which would be enough to break a sound bone, in his attempt to test the strength of the callus; which would be a total and gross perversion of the real meaning of the witness.

III. The conduct of the officer having the jury in charge, as disclosed in the depositions taken, although perhaps not strictly regular, was not of such a character as to injure the parties to the action; and unless it appears that the rights of the party complaining have been in some way injuriously affected, the court will not set aside a verdict for any mere irregularity of the kind suggested. There is no pretence in this case that there was any wrong intended upon the part of the officer, but what occurred was the result of not understanding fully what it was strictly proper for him to do and not to do in the discharge of his duties. The fact that some of the jurors were allowed to visit the water-closets and basement of the court-house for the purpose and in the manner indicated in the depositions, does not furnish ground to set aside the verdict. *Nims* v. *Bigelow*, 44 N. H. 376; *Clough* v. *Clough*, 26 N. H. 33; *Winslow* v. *Draper*, 8 Pick. 170; *Chapman* v. *Coffin*, 14 Gray 454.

The frivolous remarks that passed between the officer and some of the jurymen, entirely harmless and immaterial in their character, not calculated or intended to injure either of the parties, furnish no ground upon which to disturb the verdict. *Com.* v. *Roby*, 12 Pick. 519, and cases cited; *People* v. *Ransom*, 7 Wend. 423; *Glidden* v. *Towle*, 11 Foster 150; *Page* v. *Wheeler*, 5 N. H. 91; *Shepherd* v. *Thompson*, 4 N. H. 213.

The proposition to take the affidavits of jurymen as to what occurred in their jury room, has been considered and decided adversely to the plaintiff in this State. *Leighton* v. *Sargent*, 31 N. H. 119.

SARGENT, J. The engraving that was offered as a chalk, taken alone, was not objectionable. The witness may use, to illustrate his meaning, and the counsel to illustrate his case, any chalk, whether engraved or more roughly sketched, whether made with a pen, a pencil, a paint brush, a coal, or a piece of chalk. If the diagram alone were offered, and offered simply as a chalk, we see no objection to it. But when it

was offered, as the case shows this was, " as an engraving in a medical book," that makes it at once improper as evidence, because that gives it an undue importance with the jury. The jury should not know that it was in a medical book, or a law book, or what the book was that contained it. In fact, if it was to go to the jury as a chalk, it should not be in any book, for that simple fact might lead the jury to attach an undue importance to it. If the jury are to be told that the engraving shown them is taken from a medical book, or was got up by some distinguished doctor or man of science, it might give it a weight, an authority with the jury, which no mere chalk was designed to have or would have. This is a matter that must be left to the discretion of the court. An engraving may be as good a chalk as anything, but it should not be attached to or contained in any book, nor should the jury be told from what book it was taken, or that it ever was in any book, and nothing should be said about it, only that it is to be used as a sketch or chalk to illustrate the case.

When it is offered as a part of a medical book, or as the work of some distinguished man, then the presiding judge should exclude it, as he did in this case very properly. But when separated from everything else, and offered by the counsel or a witness simply as a chalk, with nothing said as to where it came from or who made it, then we see no objection to it on the ground that it was engraved, or printed, or painted, unless there was something about it that the court could see was calculated to mislead the jury. We think this matter must and ought to be left to the presiding justice to decide, as one of the matters in his discretion. In this case we see no reason why the discretion was not properly exercised.

Upon the second point, we think the answer to the question proposed tended to test not only the memory of the witness, but also his truthfulness in making the statement he had just made, that the expression which he made use of on the former trial was " a slip of the tongue." Was this explanation that he gave true or false? Was the statement which he made on the former trial, and about which there is no dispute, deliberately made,—made understandingly and intentionally? or, was it a mere slip of the tongue, a mistake, a mere inadvertence? When the witness stated that it was " a slip of the tongue," did he state truly? We think the question asked him, and the answer to it, would tend to satisfy the jury one way or the other on that point. If the course which the question indicated was pursued at the former trial, then it would seem that his attention was called to the circumstances of this statement at the time, in such a way as that if it had been a mistake, a mere " slip of the tongue," he must then have seen and known it, and that he would at once have corrected it so as to leave no wrong impression upon the minds of the jurors. We think the evidence offered had that tendency. How much weight it would have had with the jury if it had been admitted upon that question as well as on the question of memory, is not for us to say. We think the testimony competent, as bearing upon the question of truthfulness as well as that of memory, and, therefore, that it should have been ad-

mitted generally for all purposes, and not restricted to the single question of memory, as it was.

As the verdict must be set aside on this ground, it becomes unnecessary for the purposes of this case to consider the other point, the alleged misconduct of the officer in holding improper conversation with some of the jurors and otherwise. But although this case is not to be affected by that question, yet it is a subject of great consequence to the proper administration of justice. We have therefore ordered an investigation of these charges against the officer to be made in a separate proceeding.                                        *New trial granted.*