## DOLE *v.* JOHNSON.

The rules prescribing the qualifications of experts are established by law; but whether a witness offered as an expert has the legal qualifications which entitle him to testify in that capacity, is a question of fact to be decided by the court, in the exercise of its discretion, at the trial of the cause; and the decision of the presiding judge, in such a case, is not subject to exception or revision.

A consideration of the essential qualifications which a person should possess in order to be admitted to testify as an expert.

CASE, by Edmund Dole against Reuben Johnson, Jr., for suffering the defendant's fence to be insufficient, whereby the defendant's sheep got into the plaintiff's close and communicated to the plaintiff's sheep the disease called the "foot-rot."

The defendant contended (among other things) that foot-rot might be spontaneous.

Otis F. R. Waite, called by the plaintiff, testified that, as editor of a stock journal, he had read extensively on the subject of foot-rot; and he named the works on that subject which he had read. He also testified that he had had no practical experience in the treatment of sheep for any disease. Subject to exception, it was ruled that the witness might give his opinion, as an expert, on the question whether the foot-rot is ever a spontaneous disease, or is bred only by contact.

The jury found a verdict for the plaintiff; and the defendant moved to set the same aside, for error in the admission of the aforesaid testimony.

*Baker*, for the defendant.

The rule determining the subjects upon which experts may testify, and the rule prescribing the qualifications of experts, are matters of law. *Jones* v. *Tucker*, 41 N. H. 546. Does the reading of different works upon the subject of foot-rot qualify the witness to give his opinion as an expert whether foot-rot is ever a spontaneous disease, or is bred only by contact? Professional books, or books of science (*e. g.* medical books), are not admissible in evidence, though professional witnesses may be asked the grounds of their judgment and opinion, which might in some degree be founded on those books, as a part of their general knowledge. *Collier* v. *Simpson*, 5 C. & P. 73. See note 3, 1 Greenleaf on Ev., sec. 440. The case finds that Waite had read on the subject of foot-rot "extensively" as editor of a stock journal, but not that he had ever *read* upon the subject of the origin or breeding of foot-rot. See *Woods* v. *Allen*, 18 N. H. 28. The word "expert," from *experti*, signifies "instructed by experience." 1 Bouvier's Law Dic. 501.

*Parker and Wait*, for the plaintiff.

In order to qualify a witness to testify as an expert, it is not neces-

sary that he should be in the actual practice of his profession or science. It is sufficient that he has studied it. *Tullis* v. *Kidd*, 12 Ala. 648 ; 1 Green. Ev., sec. 440, note 1. This doctrine seems to be fully implied in the opinion of GILCHRIST, C. J., in *Woods* v. *Allen*, 18 N. H. 32, where he says : " The opinions of the witnesses were not, in this case, founded upon recondite principles of an art, science, or profession acquired by study and derived from philosophy ; *neither* were they founded, so far as appears, upon peculiar opportunities offered by long experience," &c. Although Bouvier states the signification of the original word, from which our word expert is derived, to be " instructed by experience," we think it much more to the present purpose to consider his exposition of the meaning of the word as adopted in our law, which he states to be, " Persons who are selected by the courts or the parties in a cause on account of their knowledge *or* skill."

FOSTER, J. The subject concerning which Mr. Waite was admitted to testify was clearly one upon which the testimony of an expert can be received. Although a majority of those who compose our juries may be men of practical experience in farming, and in the raising and care of such animals as are required for service upon their farms, still it would not, probably, be claimed by any one that a peculiar disease of a domestic animal, like the foot-rot in sheep, was a subject understood by men in general, and which a jury are presumed to be familiar with.

It is only upon matters of common knowledge that witnesses are required to testify as to facts alone, and concerning which the opinions of experts are inadmissible. *Concord R. R.* v. *Greely*, 23 N. H. 237 ; *Jones* v. *Tucker*, 41 N. H. 546. Whether a witness offered as an expert has the legal qualifications which entitle him to testify in that capacity is a question of fact to be decided by the court at the trial of the cause ; and the decision of the presiding justice in such a case is not subject to exception, nor to revision by the whole court.

But the rules prescribing the qualifications of an expert are matters of law,—the question of fact, not subject to revision, being merely whether the witness offered possesses the *legally requisite* qualifications. *Jones* v. *Tucker*, 41 N. H. 548.

That is to say,—the irreversible discretion of the court must be limited by the rules of law. And before the court, in its discretion, can bs permitted to determine the *fact* whether the witness is *qualified* to give an opinion, it must be established, as matter of law, that the witness comes within the legal category or is included among the *genera* of experts.

Who, then, is an *expert?* The term expert, from *experti*, says Bouvier, signifies " instructed *by experience*." This definition is, perhaps, too narrow ; for we must concede that there may be, in some instances and individuals, a high degree of knowledge not derived from nor perfected or enhanced by a great amount or even any degree of practical experience.

In *Page* v. *Parker*, 40 N. H. 59, Mr. Justice FOWLER says : " Upon

questions of science *or* skill, with which a jury may not be supposed to be familiar, men who have made the subject-matter of their inquiry the object of their *particular attention or study*, are competent to give their opinion. It must, however, be first shown that they are skillful or *scientific* men, or at least that they have superior actual skill or scientific knowledge in relation to the question, before their opinions can be competent."

In *Jones* v. *Tucker*, 41 N. H. 547, Mr. Justice DOE has collected the following definitions of the term *experts:* " Men of science," *Folkes* v. *Chadd*, 3 Doug. 157 ; " persons professionally acquainted with the science or practice," Strickland on Evid. 408 ; " conversant with the subject matter," Best's Principles of Evid., § 346 ; " persons of skill," *Rochester* v. *Chester*, 3 N. H. 349 ; " experienced persons," *Peterborough* v. *Jaffrey*, 6 N. H. 462 ; " possessed of some peculiar science or skill respecting the matter in question," *Beard* v. *Kirk*, 11 N. H. 397 ;—and Mr. Justice DOE's own description of an expert is,—he " must have made the subject upon which he gives his opinion a matter of particular study, practice, or observation, and he must have *particular* and *special knowledge* on the subject." And questions upon which the opinions of experts are admissible are, he says, " questions of science, skill, or trade," *or* when the subject matter " so far partakes of the nature of a science as to require *a course of previous habit* or *study* in order to the attainment of a knowledge of it." *Jones* v. *Tucker,* before cited.

Mr. Justice REDFIELD, in his edition of Greenl. Ev., vol. I, § 440, *a*, says : " The term ' expert ' seems to imply both superior knowledge and practical experience in the art or profession ; but, generally, nothing more is required to entitle one to give testimony as an expert than that he has been *educated in the particular art or profession.*"

Mr. Smith, in his note to *Carter* v. *Boehm*, 1 Smith's L. C. 286, says : " It does not seem to be contended that the opinions of witnesses can be received when the inquiry is into a subject-matter the nature of which is not such as to require any peculiar habits or study in order to qualify a man to understand it."

Pothier, in his Treatise on Civil Procedure (part I, chap. 3, art. 3, § 1), speaks of the experts appointed by the French courts as " men peculiarly fitted for the duty by a course of studies expressly directed to this end."

The most common definition in our own reports of the term " expert " is, one possessed of " science *and* skill"—*Boardman* v. *Woodman*, 47 N. H. 134, and other cases too numerous for citation. But this definition is too general to be satisfactory.

But if it be admissible to recognize one as an expert who has not the qualification of *skill*, which is defined by Webster as " the familiar knowledge of any art or science, united with readiness and dexterity in execution or performance, or in the application of the art or science to practical purposes," it evidently will not do to omit the recognition and requirement of the only other branch of the definition, " *science,*" which must certainly, for this purpose, require a definition not limited

to the precise terms of its derivation, "knowledge," in a general sense (for that would be to exclude, immediately, the function of the expert, which is to express an *opinion*, not positive knowledge); but the term must be considered as implying and requiring, in the language of DOE, J., in *Jones* v. *Tucker*, before cited, "*special* and *peculiar* knowledge." And therefore it has been held, in our highest courts, that the testimony of experts can be received implicitly only on points of a really scientific character, and the persons offered must be *really* men of science. *Livingston* v. *Jones*, 18 Leg. Int. 293; *S. C.*, 3 Wall. Jr., C. C.; *Allen* v. *Hunter*, 6 McLean 303.

Mr. Waite had no *skill* whatever, "no practical experience in the treatment of sheep for any disease." That he must then have had *special* and *peculiar* knowledge, that he must have been *really* a man of science, in order to be qualified to give an opinion, would seem to be a settled and definite rule of law. The extent of Mr. Waite's qualification is thus described : "As editor of a stock journal, he had read extensively on the subject of foot-rot."

The object of all testimony in courts is to place before the jury a knowledge of *facts* pertaining to the case under consideration, and it is a serious departure from this purpose ever to admit, instead of actual knowledge, mere opinion, however correct it may probably be; and therefore opinion, if admitted at all, should be as nearly approximated as possible to the actual knowledge of fact for which it is substituted;—and it should always be required of an expert that he should, at least, be sufficiently acquainted with the subject-matter of his testimony to *know* what its laws are, and not merely to conjecture or to have an idea about it. That is, he should be *really* a man of *science*. The *science* (especially in the absence of *skill*) which an expert should be required to possess and employ upon a given subject, implies that special and peculiar knowledge acquired only by a course of observation and study, and the expenditure of time, labor, and preparation, in a particular employment and calling of life.

The matter of our present consideration is of vast importance. "In the multiplication of interests connected with the application of the laws of science which are daily growing more and more numerous and refined, it is hardly possible to dispense with the aid of experts in determining the rights of parties;" but it is greatly to be feared that an unwise generosity and liberality of construction have sometimes permitted the admission of this kind of evidence to an extent outside the bounds of discretion and safety, and that perhaps a more scrupulous regard for and estimation of the great importance of the office of an expert in the ascertainment of truth than has sometimes been exercised has become necessary, not only for the vindication of justice itself, but also for strengthening the confidence of the public in its ministers and instrumentalities.

We admit the wisdom of the rule which, permitting a man of genuine science to give as his opinion the results of study and research into books of acknowledged authority, yet will not allow such books to be read in court to the jury. The rule is founded partly in the

delay which would thus be occasioned to the business of courts, and partly in the idea that it is safer, on the whole, to trust to the judgment of learned men, acquired by study, observation, and skill, than to the imperfect deductions of jurors, hastily derived from readings not familiar to them, unassisted by study, examination, and comparison of kindred subjects (though we must confess that, in a particular case, we may have little doubt that a page from Youatt or Morrell would be a safer guide for the jury than the opinion of such a witness as Mr. Waite). But so long as the opinions of the most distinguished and most learned authors in the world, expressed through the direct and pure media of their celebrated works, are thus excluded from the jury, surely it can be neither wise nor prudent to admit opinions unsustained by the slightest experience or even observation, the deductions of readings at the best scanty and superficial, because not pertaining to the *special study and business* of the reader.

We would by no means detract from the value of the opinions of learned men upon subjects to which a substantial portion of their lives has been devoted ; on the contrary, great respect should be accorded to the views of such a class of witnesses ;—but we are of the opinion that no little circumspection and care should be taken with regard to the evidence of so-called experts. The rule which admits such testimony is exceptional ; and all evidence which is not founded upon absolute knowledge of the facts pertaining to the cause that is being investigated should be received with caution. See *Brehm* v. *The Great Western Railway Company*, 34 Barb. 273.

" The maxim *cuique in sua arte credendum* permits experts to be examined to questions of art or science peculiar to their trade or profession. * * * But experience has shown that opposite opinions of persons professing to be experts may be obtained to any amount; and it often occurs that not only many days, but even weeks, are consumed in cross-examinations to test the skill and knowledge of such witnesses and the correctness of their opinions, wasting the time and wearying the patience of both court and jury, and perplexing instead of elucidating the questions involved in the issue." GRIER, J., in *Winans* v. *N. Y. & Erie Railroad*, 21 How. 101.

Of course, it must be admitted that the testimony of knowledge and opinion, obtained from mere reading, without *study*, reflection, or observation, is no more than a relation by the witness of that which the policy of the law excludes, namely, the books themselves, which the witness has read.

The limit of safety in this direction is reached, it would seem, when we admit, as the practice in this State is, the opinions of medical men, for instance, with regard to a disease which in actual practice they may not have treated, but concerning which the science and skill of long experience in the affinities and analogies of the subject have prepared them to speak with confidence, from a knowledge of the rules and laws governing the special subject of inquiry.

Take this example, for illustration (and to a certain degree, it seems to me to be the true test for the ascertainment of the qualification of

an expert who, confessedly, is destitute of *experimental* knowledge):
the application of the hydrostatic test in the detection of infanticide
was, for several centuries, regarded as decisive, by men of distinction
who had thoroughly experimented on the subject; yet when Dr. Wm.
Hunter, who had paid no attention to the matter experimentally, op-
posed the test as fallacious, few men dared to question his opinion, and
at last Baron GARROW congratulated a British grand jury upon the ex-
plosion of that "*scientific humbug*," as he styled it. 2 Beck's Med.
Jur. 908.

But Dr. Hunter was a man of real science, who had devoted his life
to the study, elucidation, and practice of those rules and laws which
govern the great subject which embraced this particular inquiry.

And so the practice in this State permits the skilled practitioner, who
has made himself familiar with the science of medicine or surgery by a
long course of study and practical experience with kindred subjects, to
testify as an expert; and common sense demands that such a man
shall have respect given to his opinion, though he may have had no
actual experience in a particular case.

But how is it in the case of this witness? He was not a veter-
inarian, nor any other kind of a physician or surgeon. "He had had
no practical experience in the treatment of sheep," nor of any person
or thing, "for *any* disease." He was the editor of a newspaper, devot-
ed, not to the special consideration of this, nor even of kindred sub-
jects, but embracing the very large class of matters ordinarily includ-
ed in a stock journal. His newspaper was, probably, the ordinary col-
lection of miscellaneous literature and news items, concerning all the
diverse matters embraced within the range of such a production, its
editor having and making no pretension to veterinary skill and prac-
tice.

It being evident, too, that in the line of his comprehensive reading
and study the subject of the diseases of animals was by no means a
specialty, the element of editorship has in reality nothing to do with
the party's qualifications. "As an editor," it is said, he had read
extensively on the subject of foot-rot. So, as a lawyer, prosecuting
or defending a man charged with murder, I, who am not a doctor,
may have read extensively on the subject of the effects of strychnine
and its manifestations after death, and, as the result of my reading, I
might well form the opinion that enough of strychnine might be admin-
istered to cause death, without the possibility that a medical man or
chemist could be able to detect it in the stomach or blood of the deceas-
ed: but, it is to be hoped, my opinion upon this subject would not be
allowed. And, as a lawyer, also, in the examination of this case, I
have, in fact, read extensively on the subject of foot-rot—the books of
Morrell, Youatt, and Clock. Morrell and Youatt do not undertake to
account for the origin of the disease. It is, they say, a disease of the
liver, but its manifestation is evidently connected with the soil and the
peculiar state of the pasture. Henry Clock, V. S., graduate of the
Royal college of Berlin, and late veterinary surgeon-in-chief of the U.
S. army, says: "The rot is produced by many causes, some of which,

however, have not been as yet sufficiently investigated." All these authors agree that the disease is spontaneous, and none of them inform us whether or not it is contagious. As the result of *my* reading, I should, perhaps, be inclined to believe the disease is *not* contagious; but my opinion is no more admissible than the books themselves of these authors. They are men of acknowledged science and skill. The witness in this case can have examined no better authority. Why should his opinion, without practical skill and experience, be received, and theirs rejected?

In view of all these considerations and of the evidence reported by the case submitted to us, we are strongly of the opinion that the witness, having confessedly no veterinary skill nor practice, having also no professional education, not being in any true sense a man of science because not instructed and prepared by a long course and habit of study concerning the diseases of domestic animals, did not possess the legal qualifications of an expert.

The question is then presented whether this court, entertaining the views expressed, but sitting here to pass upon and rectify errors in matters of law exclusively, has power to revise the ruling of the judge at the trial term.

An examination of the practice of the various tribunals in this country and in England, upon the subject of our present inquiry, will lead to the most unsatisfactory results. It will be found that, while in many States the purpose and the practice of the courts have been to require that the evidence of experts should be limited and restrained by stringent rules, in other States very slight qualifications have been deemed necessary in order to the admission of mere opinion in evidence.

This diversity in practice is owing, undoubtedly in a great degree, to a confusion and mixing up of matter of law with matter of fact by individual judges, thus rendering the aspect of the law, as it in fact exists, obscured by diversity of practice in the exercise of judicial discretion. One judge, entertaining strict views, and disposed to limit the evidence of opinion, has required the highest standard of qualification in an expert to be established as matter of law; while another judge, thinking it safer that a jury should be allowed to consider and weigh opinions and gather all the light and knowledge they may from them, though to his own mind they may be unsatisfactory or even very probably incorrect and not founded in reason or common sense, has required a very low standard of qualification to satisfy the demands of the law.

The practice, therefore, in this State, as elsewhere, is unfortunately not uniform; but, on the contrary, it has been so various as to render doubtful and uncertain, to the apprehension of many members of the profession, what is in fact a perfectly clear, fixed, and certain condition of the law upon the subject.

It is expressed by Mr. Justice DOE, in *Jones* v. *Tucker*, in these words: " When a witness is offered as an expert, three questions necessarily arise: 1. Is the subject concerning which he is to testify one upon which the opinion of an expert can be received? 2. What are

the qualifications necessary to entitle a witness to testify as an expert ? 3. Has the witness those qualifications ? " The first two questions are matters of law ; the third is matter of fact.

We have endeavored to express the opinion of this court upon the first question, that the disease of foot-rot in sheep is a subject upon which the opinion of an expert can be received. Upon the second question, that the qualifications necessary to entitle Mr. Waite to testify as an expert are these: He must either be a veterinary doctor, qualified by *some* reading and study as such, and having *some* practical experience in healing diseases of domestic animals, even though not practically acquainted with the disease of foot-rot in sheep, or else he must be really a man of science, qualified by a previous habit and course of attention, observation, and particular and special study, in the direction of the subject-matter of his testimony.

But, as to the third question, while it is settled, as matter of law, what qualifications are requisite, the possession of those qualifications is equally well settled to be a question of fact, purely within the province and discretion of the judge before whom the witness is offered. His decision concerning the matter is not subject to revision. It would not be wise to adopt a different rule. The ability or disability of a witness to testify, under the legal requirements for the admission of opinion, is a matter most conveniently and satisfactorily determined at the trial, upon personal examination of the witness. It can, indeed, be determined in no other way.

But the judgment of this court as to the considerations which should control the exercise of discretion by the judge at the trial being here indicated, may serve as useful suggestions, if not as an inflexible rule and guide, to the practice of the bench and the bar at trial terms.

In the present case, it does not appear that any rule of law has been disregarded. The witness testified that he had read extensively on the subject of foot-rot, and named the works on that subject which he had read ; and we cannot say, as matter of law, that there was no evidence from which the presiding judge *might* find that the special study, observation, course of life, or scientific habit and character of the witness fulfilled the requirements of the law.

*Judgment on the verdict.*