Merrimack, }
April 6. 1909. }

## PIPER *v.* BOSTON & MAINE RAILROAD.

Where a release is relied upon as a defence to an action for negligence, evidence that the agent who obtained the plaintiff's signature thereto attempted to conceal the real nature of the transaction from the latter's wife is admissible against the principal.

A verdict cannot be ordered for the defendant in an action for negligence when there is proof of fault on his part, and the evidence as to the plaintiff's conduct does not conclusively establish his want of care under all the circumstances.

If the answer of a witness is otherwise competent, it is not to be excluded because it is not responsive to the question.

Where the answers of a deponent are incoherent and confused, his mental condition at the time the deposition was taken is a relevant fact and may be proven by the testimony of one present at the examination.

An expert medical witness may give an opinion based upon his reading and study of statistics published by scientific authorities.

Mortality tables are competent evidence of the expectation of life.

A verdict cannot be set aside for remarks of counsel in argument if there was no attempt to state a fact not in evidence, and the erroneous views of law therein expressed were not confirmed by the court.

A verdict is not set aside for erroneous instruction when it is apparent, upon a consideration of the whole charge, that the jury were not misled thereby.

The denial of a request for specific instructions is not exceptionable if their substance, so far as applicable to the evidence, is included in the charge.

Where the general rules of law applicable to the facts in evidence are correctly stated, it is not incumbent on the court to make a specific application of them.

A brief statement accompanying a plea of the general issue is not demurrable and does not require an answer; and if it is deemed insufficient, the proper course is to move its rejection, or to object to evidence offered in its support.

The servant of an express company, while engaged in his master's business in the train-shed of a passenger station, is an invitee upon the premises, toward whom the railroad company owes the common-law duty of ordinary care and not the duty which the law imposes upon common carriers for the protection of passengers.

An agreement whereby the employee of an express company waives any right to damages for injuries resulting from the negligence of the servants of a railroad company with which his immediate employer has contractual relations, and which is based upon a contract of indemnity voluntarily entered into by the express company with the railroad company, is not void as against public policy, and constitutes a defence to an action for injuries sustained by him while laboring upon the premises of the railroad company and caused by the negligence of its servants.

Case, for personal injuries sustained by the plaintiff while at work in the defendant's passenger station at Concord as an employee of the American Express Company, and caused by negligence of the defendant's servants in the management of a locomotive. Trial by jury and verdict for the plaintiff. Transferred from the October term, 1907, of the superior court by _Pike_, J.

The defendant pleaded the general issue and filed a brief statement setting forth certain agreements made prior to the accident between the plaintiff and the Express Company and between the Express Company and the defendant, and also a release under seal, given by the plaintiff after his injury to the Express Company and the defendant. The plaintiff replied that the special release was not his deed and was obtained by fraud, and demurred

to the other matters of defence pleaded in the brief statement. The demurrer was sustained, and the defendant excepted.

By his agreement with the Express Company, entered into in consideration of his employment, the plaintiff assumed "all risk of accidents and injuries which I shall meet with or sustain in the course of my employment, whether occasioned or resulting from or by the gross or other negligence of any corporation or person engaged in any manner in operating any railroad, . . . or of any employee of any such corporation or person, or otherwise," promised to "execute and deliver to the corporation or persons owning or operating any railroad . . . upon which I shall be so injured a good and sufficient release," and agreed that the provisions for waiver and release should be held to enure to the benefit of every railroad corporation upon whose lines the Express Company should forward merchandise.

The agreement between the defendant and the Express Company provided that the railroad should "furnish to the Express Company, without charge, all requisite, reasonable, and necessary facilities, conveniences, and rooms in or connected with its stations and depots, for the care and handling of its express matter, and the loading and unloading thereof into and from the cars, with a view to the prompt dispatch of its business," and that the Express Company should "indemnify and save harmless the railroad from all claims for property damaged, injury to or death of person, which may be made by the officers, agents, or employees of said Express Company while acting in the scope of their employment."

The release under seal was expressed to be in consideration of the payment of $65 to the plaintiff. The circumstances under which it was given and the facts relating to the accident in which the plaintiff was injured, to evidence admitted subject to exception, and to instructions requested by the defendant and refused by the court are stated in the opinion.

*Henry F. Hollis*, for the plaintiff.

*Mitchell, Foster & Lake* and *Martin & Howe*, for the defendant.

PEASLEE, J. The demurrer to the plea which sets up the contract between the defendant and the American Express Company and that between the company and the plaintiff as a bar to the plaintiff's right of action was properly sustained. The contracts differ in no essential respect from those considered in *Baker* v. *Railroad*, 74 N. H. 100.

There was abundant evidence that the release was obtained by

fraud. It appeared from the testimony of witnesses and from the plaintiff's signature upon the release, that he was not in a normal condition at the time it was executed. He was not then able to read and did not know that the paper was a release, or that it in any way concerned the defendant. He was not informed as to its contents, and supposed it was merely a voucher for his month's pay, which was the sum received. There was also evidence that before he was sent for to go to the Express Company's office, he had been told by the party who obtained the release that his pay would be allowed to him while he was incapacitated. He had no idea that he was dealing with an agent of the defendant.

It further appeared that the agent subsequently attempted to conceal the nature of the transaction from the plaintiff's wife and assured her that the paper had no reference to the defendant. The exception to the admission of this evidence on this issue must be overruled. The defendant claims the benefit of the acts of the person obtaining the release, and is therefore chargeable with all his acts which are parts of that transaction. *Rolfe* v. *Railroad,* 69 N. H. 476, 477, and cases cited.

It is urged in support of the motion to direct a verdict, that the evidence brings the case within the class of which *Gahagan* v. *Railroad,* 70 N. H. 441, is a type, rather than that of which *Minot* v. *Railroad,* 73 N. H. 317,—74 N. H. 230, is typical. That there was evidence of the defendant's fault is not open to question. It ran a shifting engine over the tracks through the passenger train-shed in Concord in an unusual way, at a high rate of speed, and without warning. The real issue is upon the care of the plaintiff.

There was evidence which would have warranted the jury in finding the state of facts related below. The plaintiff, in the course of his employment as a servant of the Express Company, went across the tracks in the station to a car standing on the track next east of the train-shed. As he went he saw the shifter standing among the switches below the train-shed and about 1,000 feet from him. It had been the custom, as he had observed it in seven years' experience, for the shifter to wait there until train No. 5 came in from Boston. Until that time it had no business in the train-shed. He had reason to think that no train or engine would pass over the tracks for more than ten minutes. Acting upon this belief, he recrossed the track without taking further precautions, and was struck by the shifter.

The defendant concedes that such facts would bring the case within the principles laid down in *Minot* v. *Railroad, supra ;* but it insists that the plaintiff should have known the shifter might come up the track before train No. 5 came in. There are two

tracks outside the shed, used for shifting purposes. If both of these are blocked, an engine cannot pass from south to north except through the train-shed. On the morning of the accident these outside tracks were blocked by cars which were to be shifted onto sidings at the northwesterly corner of the train-sheds, to make up the Hillsborough and Claremont trains. If the road engines came out from the round-house south of the station and went to the yard north of the station in good season, they shifted their trains onto their respective sidings. If they were late out, the shifter placed the trains. The road engines were not out this morning. From these facts it is argued that the only way for the shifter to get to the head end of these trains was through the train-shed, and that the plaintiff knew or ought to have known this fact and have been on the lookout. There are several answers to this proposition. It does not conclusively appear that the plaintiff knew the outside tracks were both blocked. It does not appear that he knew the road engines were not out; and it was only in that event that there would be any call for the shifter to go north. Lastly, there was nothing to prevent the shifter from pushing one of the trains up into the north yard and then proceeding in the usual way. The considerations here urged are merely evidentiary facts, tending to prove the defendant's contentions. They do not conclude the matter, nor authorize the withdrawal from the jury of the question whether these pieces of evidence or those leading to the opposite conclusion were of the greater weight. The motion to direct a verdict was properly denied.

Various exceptions to evidence are urged. On cross-examination, in response to the inquiry "How far is it from the place where you left the Hillsborough car to the place on the White Mountain track where you were hit?" the plaintiff testified "I don't know; they dragged me 117 feet." The defendant excepted to this, to expert testimony based upon it, and to the argument of counsel that it was probable that when the plaintiff returned to work some two months after the accident he would "go down and see how far they dragged him." The evidence was properly admitted. *Glauber Mfg. Co.* v. *Voter*, 70 N. H. 332, 333, and cases cited. The argument stated no fact not in evidence, but properly urged upon the jury's attention an established opportunity to obtain the knowledge testified to.

The plaintiff's testimony, that he did not understand that the agent of the Express Company from whom he received the $65 represented the defendant, was admissible upon the issue of fraud in obtaining the release.

The plaintiff's mental condition when he gave his deposition

would be a fact to consider in determining the weight to be given to the answers he made. There was no error in allowing his wife to testify on that topic. While demeanor evidence is usually supplied by the actual observation of the witness by the jury, yet when, as here, his appearance of nervousness and confusion, as the examination went on, could not be observed by them, it was properly put in evidence by the testimony of those who did observe it. 2 Wig. Ev., s. 946. If he had testified on the stand and had manifestly become so wearied by the strain of the examination that his answers, which had theretofore been clear and responsive, became incoherent or confused, it would have been proper for the jury to consider this fact in determining the weight to attach to the later responses.

The evidence that it would be safer to run the shifter over the outside tracks than over those in the train-shed is excepted to upon the ground that it tended to prove negligence in a matter not involved in this suit. One issue in this case was whether it was negligent to run a shifter over the track in the train-shed. Evidence that there was another and safer way to do the business would plainly have a tendency to prove that it was negligent to adopt the more dangerous method.

The testimony of Dr. Richardson as to traumatic injuries causing multiple sclerosis was properly admitted. He said: "I hope it is understood that this is not of my own experience; it is statistics which have been published. Statistics give as high as twenty per cent of cases. The most reliable statistics now known are those of the Vanderbilt clinic in New York, which give ten per cent of all cases received there as being of traumatic origin."

"The limit of safety in this direction is reached, it would seem, when we admit, as the practice in this state is, the opinions of medical men, for instance, with regard to a disease which in actual practice they may not have treated, but concerning which the science and skill of long experience in the affinities and analogies of the subject have prepared them to speak with confidence, from a knowledge of the rules and laws governing the special subject of inquiry." Dole v. Johnson, 50 N. II. 452, 456. The jury are to be given the expert opinion of the witness, founded upon the authorities. See State v. Wood, 53 N. H. 484; Ordway v. Haynes, 50 N. II. 159. This is the substance of what was done in the present instance. The witness could not truthfully state a fixed percentage. The best that could fairly be done was to give the reasonable limitations, and this the witness undertook to do. In its last analysis, the testimony rested upon his judgment to give it value. It was, in effect, his opinion that probably about ten per cent of the cases of multiple sclerosis were caused by violence,

although statistics which he was bound to give some credence to fixed the percentage higher.

The mortality tables were competent evidence of the plaintiff's expectation of life. 3 Wig. Ev., s. 1698, and cases cited.

The exceptions to the closing argument of the plaintiff's counsel to the jury must be overruled It has not been pointed out wherein there was any attempt to state any fact which was not in evidence, nor that the court confirmed any erroneous view of the law. *Story* v. *Railroad*, 70 N. H. 364, 376. " In no case has a verdict been set aside when the remarks of counsel were founded on evidence which related to a material issue, no matter what the form of the statement, how forcibly it was put, or how much it tended to prejudice the jury in favor of his client." *Ib.* 387.

The exceptions to the instructions given and refused remain to be considered. At one place in the charge the court said : " The defendants further claim that even if the plaintiff originally had a cause of action against them for the injuries complained of, he has released it." The defendant excepted upon the ground that it " tends to give the jury the impression that taking the release was an admission of liability." It now urges this exception. It appears from the record that just before the jury retired the court gave them this instruction: " If you find that the release was invalid, you will not consider it upon the plaintiff's or defendant's negligence. It has no bearing whatever, is an independent matter ; and having passed upon whether it is a proper release or not, you will not consider it any further in the case ; that is, it has no bearing whatever upon the plaintiff's negligence, or defendant's negligence." Comment seems unnecessary. The exception is overruled.

Exceptions to various instructions, upon the ground that there is no evidence to which they can apply, are disposed of by what has been said upon the motion to direct a verdict.

The sixth exception is to putting the question of the defendant's negligence before the plaintiff's care in giving the instructions. That this is the usual way of stating the case, no one familiar with jury trials since negligence suits have become numerous will deny. In any event the objection states no question of law. *Elwell* v. *Roper*, 72 N. H. 585 ; *Walker* v. *Railroad*, 71 N. H. 271 ; *Rublee* v. *Belmont*, 62 N. H. 365. And beyond all this, when the court took up the subjects in detail, the plaintiff's care was considered first.

The jury were instructed that negligence on the part of the defendant might be found from the failure to give warning, the failure to keep or provide a proper lookout, or from the excessive speed. The defendant excepted upon the ground that these omis-

sions would not have been negligence toward the plaintiff unless he reasonably believed he had a clear track, and the engineer knew or ought to have known he was acting on such belief. This instruction was given, in substance. The jury were told that there was no duty to keep a lookout, etc., except so far as there were reasonable grounds to believe that people would be there. In *Waldron* v. *Railroad*, 71 N. H. 362, the engineer had no reason to think the plaintiff would go on the track, and that fact broadly distinguishes that case from the present one. The legal principle governing the point " was fully stated in the general instructions. Each party had an opportunity in argument to apply it to his view of the facts, and it was not error of law for the court to refuse to give instructions on its application to particular evidence." *Rublee* v. *Belmont*, 62 N. H. 365, and cases cited.

There was no error in the refusal to give the forty requested instructions. The instruction that if Piper knew the outside tracks were blocked he could not recover was rightly refused. As has been heretofore indicated, this fact would not be conclusive of the case.

The instructions relating to the details of Piper's reliance upon the custom of the switching engine to wait for the Boston train were included in the general instructions on that subject. The test given to the jury was the usual one—reasonable conduct under the circumstances of the case.

The instruction that the evidence showed that after the engineer saw Piper he did all he could to avoid the accident was properly refused, as relating to an issue not submitted to the jury. They were told that they might find negligence in the matter of a general warning, of failure to set and keep a proper lookout, or of excessive speed. But it is also true that the evidence was not conclusive that the engineer stopped as quickly as he could. There was testimony that if the engine was not going faster than the engineer testified that it was, it could have been stopped in less than half the distance the plaintiff testified that they dragged him. From this it could be found that the engineer did not do everything required of him after he saw Piper.

The instruction that the engineer was warranted in assuming that Piper would stop before he reached the track was properly refused. *Minot* v. *Railroad*, 73 N. H. 317.

The instructions wherein the court was requested to charge the jury as to the effect of specified evidence were properly refused. Having correctly stated the general rules of law applicable to the facts, it was not incumbent on the court to make a specific application of them. *Rublee* v. *Belmont*, 62 N. H. 365.

*Exceptions overruled.*

YOUNG, J., dissented: the others concurred.

After the foregoing opinion was filed the defendant moved for a rehearing, and the parties were heard upon the motion by brief and by oral argument.

*Mitchell, Foster & Lake* and *Martin & Howe*, in support of the motion.

*Henry F. Hollis* and *James W. Remick*, opposed.

WALKER, J.   This case has been argued by counsel and considered by the court upon the theory that the defendant filed a special plea setting up the contracts, and that a demurrer to the special plea was sustained, thereby presenting the question whether the facts pleaded constituted a defence to the action.   Upon the record, however, the only plea filed was " not guilty."   The plaintiff demurred to parts of the brief statement accompanying the plea, and filed replications in which the defendant did not join. A brief statement, being merely a notice, is not demurrable and does not require an answer.   If it is considered insufficient, the proper course is to move to reject it, or to object to the evidence when offered.   *Leslie* v. *Harlow*, 18 N. H. 518, 519 ; *Folsom* v. *Brown*, 25 N. H. 114 ; *Clough* v. *Clough*, 26 N. H. 24 ; *Pallet* v. *Sargent*, 36 N. H. 496 ; *Vaughan* v. *Morrison*, 55 N. H. 580, 581. Since the brief statement was not demurrable, it was technically error to sustain the demurrer.   But it is apparent the parties, informally perhaps, submitted to the trial court the competency of the evidence set out in the brief statement as a bar, and the defendant submitted to the determination of the judge as the law of the case, as it was bound to do (*Batchelder* v. *Railway*, 72 N. H. 329), considering that it was protected by its exception. Justice would therefore allow it a new trial, even if it could technically be deprived thereof.   For the purposes of another trial, it is necessary to dispose of the questions that have been argued.

The position of the railroad is that, assuming the plaintiff's injuries were caused by the negligence of its servants, he cannot maintain this action, for the reason that he had agreed, as a material part of the arrangement by which he was permitted or employed to work in its train-shed, that he would waive any right to damages for personal injuries caused by the negligence of the defendant's servants that he might otherwise be entitled to.   The facts upon which this contention is based are admitted by the demurrer; and the question of law presented is, whether that agreement is binding on the plaintiff in this action.   He insists that it is void for the reason that it is against public policy, and argues that the defendant is a common carrier of expresses and

that it would be repugnant to its public duties as such carrier to provide in its contract with the Express Company that the employees of the latter company should assume the risk of injuries caused by the negligence of the defendant's servants. But it is essential to a correct understanding of the point in issue to ascertain what the plaintiff's *status* was as against the defendant at the time of his injuries. The duties and rights of the parties depend upon the legal relationship they sustained to each other at that time; for it may be that the semi-public character of the defendant and of the Express Company, as common carriers, does not impair, lessen, or enlarge the rights of the plaintiff as an individual to protection against the negligence of the defendant, or render inoperative and void his assent to a limited liability on the part of the defendant.

If it is assumed that the defendant was and is a common carrier of expresses (*McDuffee* v. *Railroad*, 52 N. H. 430), the plaintiff while at work in the defendant's station was not the Express Company. While he was its agent to a limited extent, he did not thereby cease to be an individual entitled to certain rights and subject to certain liabilities with reference to others with whom he came in contact. Whatever his contract was with the Express Company, he was entitled, not as its agent but as a man, to some degree of protection from the carelessness or the negligent conduct of the defendant; and on the other hand, he owed the defendant the duty of right action by virtue of his situation as an individual rightfully in the defendant's station. If he had made no contract releasing his right of action for the negligence of the defendant's servants, his common-law *status* would be the same as it now is. There would be nothing " connected with his presence " in the train-shed " that is inconsistent with the *status* of one entitled to the benefit of the law of negligence." *Robinson* v. *Railroad*, 80 Vt. 129, 136. He would have the rights of an individual rightfully laboring, either for himself or for some third party, upon the defendant's premises. The fact that he was working for another and not for himself would be immaterial upon the question of the common-law duties owed to him by others; and he would succeed in an action for negligence, not in another's, but in his own right as an individual. In this action he is seeking damages in no representative capacity. If he was rightfully upon the defendant's premises, as a passenger or as a laborer attending to his proper business, in the absence of contributory negligence he would be entitled to recover for injuries caused by the defendant's negligence, or that of its servants. Indeed, this is elementary, but its statement shows that the fact that he was employed by the Express Company is important only as evidence that his presence

in the station was rightful. His right of action for personal injury resulting from the defendant's negligence does not depend upon the question whether the contracts in accordance with which he was employed are legal or illegal. In fact, it is conceded by the defendant that he was rightfully laboring in its station. In other words, as against-the defendant he was an invitee, toward whom it was the duty of the railroad to exercise ordinary care for his reasonable safety. His position in this respect did not differ from that of a hackman or a truckman who is encouraged or invited to be in a railroad station for the convenience of the railroad's patrons in transporting them and their baggage to and from the station. *Tobin* v. *Railroad*, 59 Me. 183 ; *Wright* v. *Railway*, L. R. 10 Q. B. 298; *Holmes* v. *Railway*, L. R. 6 Exch. 123. When he became its invitee by his actual presence in the station under a license from the defendant, its duty to him commenced.

But it is important to bear in mind that he was not a passenger. "A person going upon a railway train to assist another person on or off is clearly not a passenger." 3 Thomp. Com. Neg., *s.* 2658 ; 1 Fet. Carr., *s.* 237. He was not seeking transportation, either for himself, or as the agent or employee of the Express Company (*Webster* v. *Railroad*, 161 Mass. 298)—a circumstance of much importance which distinguishes this case from *Baker* v. *Railroad*, 74 N. H. 100. And it is not claimed that he was a passenger, though it is sought to apply to him the same principles relating to the defendant's liability as apply in the case of a passenger. The argument is, that as it has been held that certain persons who are in fact transported by the railroad in its cars under a special contract are passengers, having all the rights of passengers under the law (*Jones* v. *Railway*, 125 Mo. 666 ; *Railroad Co.* v. *Lockwood*, 17 Wall. 357 ; *Gleeson* v. *Railraad*, 140 U. S. 435), the plaintiff has the same rights because he was an employee of the Express Company, as to which, it is assumed, the defendant is a common carrier. The fallacy in the argument is apparent. The public policy which would render void an express messenger's contract releasing a railroad from liability for the negligence of its servants is the public policy which protects passengers from the consequences of such contracts. If it is conceded that he is not a passenger, but a mere invitee upon the railroad's station, the reason of the rule does not apply to him. The same idea is expressed when it is said that a railroad is a common carrier of expresses, including express messengers. If that is true, then the messenger becomes in effect a passenger and is entitled to the protection of a passenger. But a discussion of this question is obviously not necessary to the decision of this case. It is enough to say that the plaintiff was not in any legitimate sense a

passenger at the time of his injuries; and it is not perceived what common-carrier duties it owed to him, except perhaps the duty arising from the joint arrangement entered into by the parties to afford him a reasonable opportunity to perform his work on its platform. It was under no direct obligation, as a matter of public policy, to allow him to load express cars attached to its trains. Unlike a passenger, he did not seek the aid of the railroad charged with the public duty of transportation, but he sought and obtained from the railroad the privilege of working for the Express Company in the railroad's station. "It was a privilege granted to the plaintiff. The plaintiff was not compelled to enter into the contract in order to obtain the rights of a passenger. Having those rights, he sought something more." *Baltimore etc. Ry.* v. *Voigt,* 176 U. S. 498, 514.

If the plaintiff had brought to the station express parcels of his own and, having obtained permission to load them onto the express car, had received his injuries, his legal relation to the railroad and the latter's resulting duty of care toward him would be no different. In that case it would not be seriously claimed that the railroad was under any obligation as a public-service corporation to permit him to do that work to the exclusion of others whom it employed or under contract permitted to do that service. If it is a part of its public duty to furnish reasonable facilities for the transportation of express matter (P. S., *c.* 159, *s.* 1; *Ib., c.* 160, *s.* 1), it does not follow that it must accord to all who present themselves the privilege of handling in its station their express articles, when ample facilities for the work are otherwise afforded. *Hedding* v. *Gallagher,* 72 N. H. 377. If, therefore, the plaintiff had no absolute right to demand of the defendant the privilege of working in its station, when engaged in his own business, he had no such right when seeking the same privilege as the employee or agent of another. Whatever right he had in this respect was purely contractual; and that means that it did not exist in the absence of a contract. It did not result from the fact that he was one of the public, who have certain rights as against a public-service corporation not dependent upon contract; for he was not present in that capacity, but as a laborer, engaged in performing a public service, it may be, but no more public or important than the work done in the train-shed by the numerous servants of the railroad. The character of the work he was doing did not change his *status* from that of an invitee to that of a passenger, or place him in the category of those whose reasonable necessity requires railroad transportation which they can demand as a public right and which they are not obliged to seek as a favor or special concession. The idea may be briefly expressed by saying that one

asking for and obtaining the privilege of working in a railroad station, whether in regard to his own affairs or as an agent of another, or as an employee of the railroad, is not exercising a public right which the railroad cannot refuse to recognize, but a private right which it is under no public duty to grant. In this respect it stands very much in the position of an individual. *Hedding* v. *Gallagher, supra.*

As the plaintiff's relationship to the defendant, in consequence of which he is *prima facie* entitled to maintain an action against it on account of its negligence and that of its employees, was that of an invitee, the question arises whether a waiver of such a claim, so far as it is based upon the fault of the defendant's employees, is binding upon him and constitutes a defence to this action. From the allegations contained in the brief statement it appears that he fully understood the conditions upon which the defendant consented to allow him to work in the station for the Express Company, one of which was that he would waive any right of action he might have growing out of the negligence of the defendant's employees with whom his work would bring him in contact. Upon this condition he obtained not only employment from the Express Company, but in connection with it a license or privilege from the defendant of occupying its premises while engaged in his work. While it may be conceded that public policy prevents the enforcement of a contract releasing a common carrier from liability for its negligence, it does not have that effect in this case, for the reason that the relationship of common carriage did not exist between the parties. As against the plaintiff, in respect to his right to reasonable protection from personal harm at the time of his injury, the defendant did not owe him a common-carrier duty, but the usual common-law duty as applied to individuals under similar circumstances. He was not seeking the transportation of himself; and the duties of the defendant as to his person were simply to use ordinary care not to injure him, who was rightfully upon its premises as a laborer. The question thus becomes one that might arise between two individuals. When it does arise between master and servant, the law implies an engagement on the part of the servant that he assumes the risk of injury from the negligence of fellow-servants. It may be said that public policy requires such an implication; and as a consequence, if a baggage-man while attending to his duties in close proximity to the plaintiff had been injured in the same way, it would be held that he was remediless. Why should one be entitled to recover for his injury and the other not? Suppose, as often happens at small railroad stations, a man is both the express agent and the station agent or baggage-man: it would be strange

that public policy should preclude him, while loading an express package onto the car, from agreeing to assume the risk of the negligence of the trainmen, while the law would cast that burden upon him when throwing a trunk into the same car. The only practical distinction that can be suggested is that in the one case he is acting as the servant of the Express Company and in the other as the servant of the railroad. In other words, the doctrine of *respondeat superior* arises in the one case and not in the other. Whether that furnishes a sufficient explanation it is unnecessary to inquire, unless it also suggests some rule or principle of public policy which prohibits an invitee, seeking his own advantage upon another's premises, from agreeing to indemnify the latter against the negligence, not of himself, but of his servants engaged in the conduct of his business. Why may not the plaintiff furnish that indemnity by special contract, as well as a surety company?

In the most favorable view for the plaintiff, barring the fact that he was not a passenger, he can only be deemed an invitee of the defendant under a special contract; and if for that reason *prima facie* the fellow-servant doctrine does not apply to him, was it not legally possible for him to waive his immunity in this respect, in consideration of his employment and of acquiring a personal right to work in the train-shed? In *Bates* v. *Railroad*, 147 Mass. 255, after holding that an express messenger does not occupy the position of a passenger, the court say (*p.* 267): " The fact that the plaintiff was riding in the baggage car, as an express messenger in charge of merchandise which was being transported there, shows more clearly that the contract by the Express Company and the plaintiff was not unreasonable or against public policy. He was there as a servant engaged with the servants of the railroad corporation in the service of transportation on the road. His duties were substantially the same as those of the baggage-master in the same car; the latter relating to merchandise carried for passengers, and the former to merchandise carried for the Express Company. His actual relations to the other servants of the railroad corporation engaged in the transportation were substantially the same as those of the baggage-master, and would have been the same had he been paid by the corporation instead of by the Express Company. Had the railroad done the express business, the messenger would have been held by law to have assumed the risk of the negligence of the servants of the railroad. It does not seem that a contract between the Express Company and the plaintiff on the one hand and the defendant on the other, that the express messenger in performing his duties should take the same risk of injury from the negligence of the servants of the railroad engaged in the transportation that he would take if

employed by the railroad to perform the same duties, would be void as unreasonable or as against public policy."

In *Griswold* v. *Railroad*, 53 Conn. 371, 389, the court, referring to the waiver of liability for negligence of servants, say: "It is not the case where a party stipulates for exemption from the legal consequences of his own negligence, but one where he merely stipulates against a liability for imputed negligence in regard to which there is no actual fault. It is easy to see, therefore, that considerations of public policy have no application to such a case. Where a master uses due diligence in the selection of competent servants, and furnishes them with suitable means and machinery to perform the service in which he employs them, he is not answerable to one of them for an injury received in consequence of the negligence of a fellow-servant while both are engaged in the same service. Here the rule of *respondeat superior* is waived, and it is generally put on the ground of implied contract; and if a waiver may be implied in such a case, why not give effect to an express agreement in the case of a free passenger?" By a paraphrase it may be asked, why not give effect to the express agreement of the plaintiff, who was not a passenger in any sense, but was merely permitted to labor in the defendant's train-shed?

In view of the general policy of the law that the freedom of contract should not be unreasonably curtailed, no special considerations requiring or justifying the plaintiff's attempt to repudiate his agreement in this case are apparent. On the contrary, the fellow-servant doctrine is strong evidence that public policy recognizes such an agreement entered into by one in the plaintiff's position as valid and binding. *Railroad Co.* v. *Lockwood.* 17 Wall. 357; *Baltimore etc. Ry.* v. *Voigt*, 176 U. S. 498. Whether the plaintiff is regarded as a fellow-servant with the trainmen or as a stranger rightfully where he was, the facts alleged in the brief statement and admitted by the demurrer show that he cannot maintain the action upon the issue here considered.

There was error in sustaining the demurrer. The defendant is entitled to a trial upon the issues of fact which may arise under the contracts set up in the brief statement which have not been tried. Should such trial be had, a majority of the court are of opinion that the question whether the contract between the Express Company and the railroad was voluntarily entered into by the former—*i. e.*, whether it was made as it was made in respect to the liability of the defendant for injury to the Express Company's employees at the request of the company, or because the railroad refused or was unwilling to make it on other terms—may

be controlling. The verdict upon the issues tried may stand until the other issues are disposed of.

*Rehearing granted.*

Parsons, C. J., concurred: Young, J., concurred in the result: Bingham and Peaslee, JJ., dissented.