Grafton, ⎱
Dec., 1894. ⎰

## DAVIS, *Adm'x, v.* CONCORD & MONTREAL RAILROAD.

In an action against a railroad company for negligently causing the death of a traveler at a highway crossing, the fact that the deceased attempted to drive over the track with knowledge that a train was approaching within a distance of six hundred feet, is not conclusive, as matter of law, of a want of due care on his part.

When it appears that the deceased was injured upon a crossing with which he was familiar, and where there was a flag station, by a train running at the rate of more than forty miles an hour, a rule of the company providing that the speed of trains be reduced to fifteen miles an hour when passing stations is competent evidence on the question of his care in attempting to cross the tracks.

The fact that a traveler upon a highway does not stop, look, and listen before crossing a railway track is not conclusive, as matter of law, of a want of due care on his part.

CASE, for negligently causing the death of the plaintiff's intestate, Orren B. Davis, who was struck by a locomotive while driving over a highway crossing of the defendants' railroad in Rumney. Trial by jury. Verdict for the plaintiff.

There was a flag station at the crossing where the collision occurred. The plaintiff put in evidence the following rules of the defendants, subject to their exception: "Rule 22. The speed of passenger trains must be reduced to fifteen miles per hour passing stations. Lost time must not be made up on heavy descending grades, sharp curves, or on track known to have rough places. Rule 183. They (the brakemen) must be at their brakes or just inside the door while the train is moving, ready to act instantly. Rule 184. When approaching or passing stations, and at all points where stops are required by law, brakemen must stand at the brakes ready to apply them if called for, and not rely wholly upon the air brake."

The defendants requested the following instructions, which were not given, and they excepted: "(1) It is the duty of a traveler upon the highway, in approaching a railway crossing, to look both ways and listen for trains, at a safe distance from the track, or to take such other precautions as may be necessary to ascertain that he may cross without danger of being struck by an approaching train. (2) Where a traveler upon the highway approaching a railway crossing with which he is familiar, with an obstructed view of the railroad track in both directions, advances to the point of intersection without looking or listen-

ing for an approaching train, such conduct will constitute negligence *per se*, so as to preclude a recovery for injuries inflicted upon him by a train while attempting to cross. (3) The track of a railroad intersecting a highway at grade is in itself a warning and notice of danger which it is the duty of the traveler upon the highway to heed. It is such notice of danger as to put the traveler upon his guard. (4) The fact that a train is behind time does not relieve a traveler from the duty of looking out for approaching trains, and ascertaining that he may cross without danger of collision. A railroad has the right to run trains at all times, and those crossing the tracks are entitled to no exemption from care and vigilance because trains are irregular or extra. It is the duty of the traveler to approach a railroad crossing under the apprehension that a train is liable to come at any moment. (5) Davis was bound to listen and look before attempting to cross the railroad track, in order to avoid an approaching train, and not to walk his horses carelessly into the place of possible danger. Had he used his senses he could not have failed both to hear and see the train which was coming. If he omitted to use them and walked his horses thoughtlessly upon the track, he was guilty, and so far contributed to his injury as to deprive him of any right to complain of others. If, using them, he saw the train coming, and yet undertook to cross the track instead of waiting for the train to pass and was injured, the consequences of his mistake and temerity cannot be cast upon the defendants."

The defendants also excepted to the denial of their motions for nonsuit and for a verdict. Further facts appear in the opinion.

*John Kivel, John S. H. Frink*, and *Bingham & Bingham*, for the plaintiff.

*Frank S. Streeter, Samuel B. Page, Joseph W. Fellows*, and *Drew, Jordan & Buckley*, for the defendants.

SMITH, J. Several witnesses testified, subject to the defendants' exception, that during the three years preceding the death of the plaintiff's intestate they often saw him drive over the crossing in question, and that he always drove slowly and watched for trains. It was conceded at the argument that the evidence was competent as tending to show that the deceased on approaching the crossing on the morning of the accident was watching for the train, that he stopped or drove slowly, and looked up and down the track to ascertain whether a train was approaching. It has repeatedly been held in this state that such evidence is competent, upon the ground that " a person is more

likely to do or not to do a thing, or to do it or not to do it in a particular way, as he is in the habit of doing or not doing it." *State* v. *Railroad*, 52 N. H. 528, 549, 550; *Hall* v. *Brown*, 58 N. H. 93, 96, 98; *State* v. *Railroad*, 58 N. H. 410, 412; *Plummer* v. *Ossipee*, 59 N. H. 55, 59; *Nutter* v. *Railroad*, 60 N. H. 483, 485; *Parkinson* v. *Railroad*, 61 N. H. 416; *Lyman* v. *Railroad*, 66 N. H. 200.

But the defendants claim that the evidence logically tended to show, not only that Davis looked up and down the track to ascertain whether trains were approaching, but that he saw the approaching train, " and knowingly and deliberately drove in front of it." This claim brings us to the consideration of the question raised by the denial of the motion for a verdict for the defendants. The question has been argued solely upon the ground that the accident was caused by the want of due care on the part of the deceased.

The plaintiff's evidence tended to show that the train left Plymouth from ten to twenty minutes late, and at the time of the collision was running at the rate of forty to fifty miles an hour; that the crossing was visible from the engine at a distance of one half mile or more; that for the distance of 165 feet before reaching the crossing an approaching train could have been seen by a highway traveler for the distance of 600 feet on the track, except that upon the highway between sixty-seven and forty feet from the crossing the train was not visible, by reason of a knoll, until it was within about 300 feet of the crossing; that the deceased was familiar with the crossing; that his horses were kind and not afraid of the cars, were walking at the time of the collision and for ten or fifteen rods before reaching the crossing; that in going over the crossing on prior occasions, the deceased was uniformly cautious and careful to look for trains. The evidence was all one way that the deceased was traveling with a suitable team, and approached the crossing as a careful and prudent person would. There was competent evidence, as it is conceded, tending to show that he looked for the coming of any train that might be approaching the crossing. If he looked, it is certain he must have seen the train within the distance of about 600 feet. The single question then is, whether the evidence conclusively shows that the attempt to cross before a train within that distance was so imprudent and reckless that no prudent person would have attempted it; or whether there was a question for the jury to determine from the evidence, viz., whether the deceased exercised proper care and caution.

"There is no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall be considered reasonable and prudent, and what shall constitute.

ordinary care under any and all circumstances. . . . When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only when the facts are such that reasonable men must draw the same conclusion from them, that the question of negligence is ever considered one of law for the court." *Grand Trunk R'y* v. *Ives,* 144 U. S. 408, 417. How near the train was to the deceased when he discovered it, and whether he saw it, as the evidence tends to show he did, does not appear. It may have been 600 feet away,— so far that persons of ordinary prudence would not hesitate to attempt to cross. Upon that question the plaintiff was entitled to the decision of the jury. A case is not withdrawn from them unless it conclusively follows, as matter of law, that no recovery can be had upon any view which can properly be taken of the facts which the evidence tends to establish. *Texas & Pacific R'y* v. *Cox,* 145 U. S. 593, 606; *Gardner* v. *Railroad,* 150 U. S. 349, 361; *Page* v. *Parker,* 43 N. H. 363, 366.

The train left Plymouth ten to twenty minutes late, and at the time of the collision was running at the rate of forty to fifty miles an hour. The speed permitted by the defendants' rules in passing stations was fifteen miles an hour. The defendants' evidence tended to prove that neither the engineer nor fireman saw the hay-rack until the moment it was struck by the engine. In *Nutter* v. *Railroad,* 60 N. H. 483, 485, it was said that the fact that the defendants' train was running at an unlawful rate of speed " might affect the question of the plaintiff's care. It may have been reasonable for the plaintiff to act upon the belief that the defendants were aware of the speed law, and would obey it. . . . The plaintiff's belief in the defendants' knowledge and presumed obedience of the speed law may have been a sufficient excuse for his want of vigilance in not observing the approaching train; and whether or not it was a sufficient excuse, is a question of fact which was properly submitted to the jury."

The crossing of a crowded thoroughfare by a pedestrian is attended with more or less danger from passing teams, yet the act is one which persons of ordinary prudence constantly attempt. A traveler is not restricted to one sidewalk when an opportunity occurs for crossing which a person of ordinary prudence would improve, using due care to avoid injury. If injured in the attempt through the negligence of another, he may maintain his action therefor, provided the attempt was one which a person of ordinary care would have made, and due care was used in making it. The result may show misjudgment as to the danger of crossing; but in such case, one is only required to judge of danger as it appeared before, and not after, the attempt.

The train was running at a rate of speed three times as great as that allowed by the defendants' rules. It must be presumed that the rules were made to be enforced, and that they were generally obeyed. Although the deceased may not have known of the existence of the rule, yet he was familiar with the crossing, frequently traveled over it, and might reasonably act on the belief that the train would be run at the usual speed in passing the station. There was at least fair room for argument that, if the rule had been obeyed, he would have had sufficient time for crossing without injury or unreasonable risk, and that it would not have been an imprudent act. The rules were competent evidence. *Lyman* v. *Railroad, supra ; State* v. *Railroad, supra ; Nutter* v. *Railroad, supra. Davis* v *Manchester*, 62 N. H. 422, is not applicable.

It was left to the jury to determine whether the speed of the train was reasonable or unreasonable, and they were instructed, among other things, " that the question was whether a person of average prudence, placed in the situation of the defendants, would have run the train at such speed." To this instruction the defendants excepted. The defendants in running their trains being bound to use ordinary care to avoid injury to highway travelers,— that is, as high a degree of care as persons of average prudence would observe,— it is obvious that the speed of the train over the crossing was an important element for consideration in determining whether ordinary care was observed. The higher the speed, the greater the danger of collision with a highway traveler. It was, therefore, a proper question for the jury whether persons of ordinary care or prudence would, in view of the dangers to be incurred and accidents to be avoided at the crossing, have run a train at a speed of forty to fifty miles an hour.

The jury were also instructed that the deceased was bound to exercise ordinary care,— such care as a person of average prudence would exercise under like circumstances; and if a person of average prudence, put exactly in the place he was, possessed of the same knowledge and means of knowledge of the danger and means of avoiding it. would or might have done as he did, he was without fault. To the last clause the defendants excepted.

Ordinary care requires that a person should act not only in view of facts of which he has actual knowledge, but in view of facts which he may learn in the exercise of ordinary diligence ; and this is what was meant by the words " means of knowledge." Ordinary care being that degree of care required by the dangers reasonably to be apprehended, there is no ground for contending that the instruction meant that the deceased was required to exercise any less degree of care than what persons of average prudence would have used under the same circumstances,— that is, in his situation. The defendants claim that the use of the

word "might" rendered the instructions erroneous. It is the same in effect whether the jury were instructed that the degree of care required of Davis was what a person of average prudence would use, or what such a person might use, under the same circumstances. The standard of care is that of a person of average prudence. If the deceased used the care of such person under the same or similar circumstances, that was all he was required to do; and it is not believed that the jury could have understood that the degree of care required to be used was lowered by the use of the word "might," in connection with the word "would."

The defendants excepted to the refusal to give the instructions requested. The fact that the deceased, before crossing, did not look or listen for an approaching train (if he did not) would not be conclusive, as matter of law, of want of due care. *Nutter* v. *Railroad, supra; State* v. *Railroad, supra; Huntress* v. *Railroad,* 66 N. H. 185; *Lyman* v. *Railroad, supra,* and authorities cited. The fact would be important evidence to be considered by the jury on the question of contributory negligence; but the conduct of the deceased is not to be judged by that fact alone. He was bound to look and listen as much, and as long, and as often, as a person of average prudence in his situation would have looked or listened, but no more, and not otherwise; and it was for the jury to say, as matter of fact, in view of all the evidence on that part of the case, whether he acted as persons of average prudence would have done under the same circumstances.

It cannot be said that the remaining requests were not properly refused. Other instructions were given besides those excepted to; and no exceptions having been taken to them, it must be assumed they were correct and such as the case called for. It may be assumed that the dangers of a railway grade crossing, and the mutual duties and rights of the parties, were called to the attention of the jury with pertinent comments. It is not the duty of the presiding justice to give instructions requested, however correct they may be as legal propositions, when their effect would be to give undue prominence to one side of the case. If the requests refused were intended as a full statement of the law of the case, they fell far short of it. They omitted entirely any reference to the duty owed by the defendants to the deceased. In a general way, the instructions requested were included in those given upon the subject of contributory negligence. It must necessarily be left to the presiding justice to decide how far it would be useful to accompany a statement of legal propositions with observations upon the facts of the case.

*Exceptions overruled.*

CARPENTER, CHASE, and WALLACE, JJ., did not sit: the others concurred.