Merrimack,  }
March 1, 1904.  }

## BOSTON & MAINE RAILROAD *v.* SARGENT.

Where the judgment rendered against co-defendants in an action for negligence is satisfied by one of them, who brings a suit for indemnity against the other, the subject-matter being the same as in the prior action, the parties are concluded by the judgment as to all issues which were in fact litigated, or which either could have litigated, in defence of the original suit; but as to other damage, the liability for which was not determined in the prior suit, it is incumbent upon the plaintiff to establish the defendant's negligence as well as his own freedom from fault, and the judgment is not evidence upon any issue thus presented.

If a shipper of freight, in pursuance of a contract with a railroad company, assumes control of the interior of a car and undertakes to heat the same, there is an implied agreement on his part to exercise reasonable care, upon which the company has a right to rely; and in an action by the corporation to recover for injuries resulting from the shipper's use of a defective stove, the mere fact that the railroad employees made no investigation of the car before shifting it in a customary manner is not sufficient to preclude a recovery.

In an action for injuries caused by the negligent maintenance of a fire in a freight car, the burden of proof is not shifted to the defendant by evidence that the interior of the car was under his exclusive control.

CASE, for negligence. Plea, the general issue. Trial by jury and verdict for the defendant. Transferred from the October term, 1901, of the superior court by *Stone,* J. The declaration contains two counts. The first is to recover the amount paid by the plaintiffs in satisfaction of a judgment which the Rolfes obtained against them and the defendant jointly, for damages occasioned the Rolfes' storehouse by fire communicated to it from a potato car in the plaintiffs' railroad yard at Penacook. The second is to recover damages which the plaintiffs sustained by reason of the destruction of the potato car and the partial burning of another car in the same fire.

The defendant's agent, Griffin, procured the potato car of the Central Vermont Railroad, to ship potatoes from Lawrence, New York, to the defendant at Penacook. While the potato car was in the railroad yard at Penacook, a fire which originated in that car consumed it, together with the Rolfes' storehouse and part of another car. The cars were the property of the Central Vermont Railroad, but it appeared that according to the rules of the Master Car Builders' Association, of which both roads were members, the plaintiffs were required to repair the damaged car and pay to the owners the value of the one destroyed, which they did, and that the shipping contract under which the potato car was obtained was made in behalf of the plaintiffs, who were connecting carriers, as well as the Central Vermont Railroad.

By the terms of the contract, the defendant was to prepare the interior of the potato car for the purposes for which he proposed using it, load and unload it, and care for its contents during transportation; and it appears that he in fact assumed the entire work of fitting up the car, put in a stove, and took charge of the fire. The plaintiffs and their employees paid no attention to these matters; they simply transported the car. In the afternoon before the fire, when the car had been in the Penacook yard some three days for the purpose of unloading, the crew of the local freight, while shifting cars about the yard in the usual course of business, in order to take out a car north of the potato car, moved the latter from where it was standing and where a fire would not have been communicated from it to the Rolfes' storehouse, to a place near the storehouse, by means of a flying switch—a customary way of shifting freight cars. While the car was thus located, the defendant's servant, Griffin, rebuilt the fire and completed the unloading of the car; and after it had stood there for about two hours, locked it up and went away, leaving a fire burning in the stove. About three o'clock the next morning, it was discovered that the cars and storehouse were on fire. The employees of the railroad knew nothing of the condition and management of the stove, or of facts putting them on inquiry that a defective stove or unsafe fire was being maintained in the car. They had worked about the yard, passed by the car while it was being unloaded, and knew that it contained a stove with a fire in it; but they made no investigation to see how it was being managed, although they could have done so prior to the time when the unloading was completed and the car locked up for the night.

In addition to this undisputed evidence, the plaintiffs introduced the judgment, the declaration, and portions of the evidence and of the judge's charge in the Rolfes' suit, showing what issues were there raised and passed upon; also record evidence of the

amount paid by the plaintiffs to satisfy the Rolfes' execution, and their expenditures on account of the burned cars.   Upon this evidence, and subject to the plaintiffs' exception to a denial of their motion to direct a verdict in their favor, the case was submitted to the jury.   The court charged that the question of the defendant's negligence in reference to the destruction of the potato car and the storehouse was conclusively determined by the judgment in the Rolfes' suit; that as to these properties, the only question for the jury to consider was whether the plaintiffs exercised ordinary care in managing the potato car; and that if they were negligent in so doing, and their negligence contributed in any way to produce the loss, they could not recover.   As to the second car, the jury were instructed that they should consider, in addition to the question of the plaintiffs' exercise of care, the further question whether the damage to that car was due in whole or in part to the negligence of the defendant; that as to that car, the question of the defendant's negligence was not determined by the Rolfes' judgment; and that upon all the issues submitted, the burden of proof was upon the plaintiffs.   The plaintiffs requested certain instructions, which were denied subject to exception, and also specifically excepted to portions of the charge which were in conflict with their requests.   The substance of the requested instructions is stated in the opinion.

*Streeter & Hollis*, for the plaintiffs.

*Sargent, Remick & Niles* and *Martin & Howe*, for the defendant, on motion for rehearing.   The defendant complains that the decision in this case is a misapplication of the principle of *Mowbray* v. *Merryweather*, [1895] 2 Q. B. Div. 640, that it sanctions indemnity between tort-feasors, and is without support in reason or authority.   Until this decision, it was settled that there can be no contribution or indemnity between wrongdoers.   *Gregg* v. *Company*, 69 N. H. 247, 251.

The opinion concedes that there was evidence from which it was competent for the jury to find that the plaintiffs were guilty of actual neglect which contributed to the destruction of the storehouse, saying: " If, as respects the Rolfes, it might be found from the evidence that the plaintiffs were negligent in not examining the interior of the car and ascertaining that the defendant was not performing his duty," etc.   This either begs the vital question in the case, whether there was evidence to sustain the verdict, or is an admission that there was such evidence.   We think the latter is the true construction of the opinion, because the court goes on to say, in effect, that although there was competent evi-

dence that the plaintiffs' negligence co-operated to cause the destruction of the storehouse, the defendant cannot avail himself of that evidence because of his own implied agreement to use reasonable care; that "the plaintiffs had the right to rely upon his agreement and to understand that he would perform his duty." In fine, the opinion holds that B's implied agreement (legal duty) to use due care operates to exempt A from his like duty, and permits the latter to shift the burden of a loss occasioned by the failure of both to perform their legal duties from his own shoulders to those of his co-wrongdoer.

The court state the defendant's duty thus: "He impliedly agreed . . . that he would exercise reasonable care" in equipping and heating the car. That is simply the duty which the law imposed upon the defendant; it is the same duty which rests on every reasonable person; and its imposition upon one has never before been held to exempt another from its performance. The parties stand with their legal rights and duties only; the defendant has not contracted to indemnify the plaintiffs for loss occasioned by a defective stove. The action is case for negligence, not assumpsit upon a warranty; yet the court has made, out of the defendant's legal duty to use ordinary care with respect to his stove, a promissory warranty that the stove was safe, and in an action for negligence has allowed a recovery as for a breach of that warranty.

Liability on a warranty is not dependent upon the warrantor's negligence, and is not defeated by passive contributory negligence on the part of the warrantee. A warranty extends to latent as well as discoverable defects. It is a very different thing from the duty to use due care. The defendant objects that the decision in this case is based upon a warranty on the part of the defendant when in fact there was no warranty, and no evidence or claim tending to show a warranty that the stove was safe; that the court have given the plaintiffs the benefit of a non-existent warranty, and thereby, in direct violation of all our decisions and those elsewhere, permitted them to recover indemnity for a loss which their own negligence helped to produce.

In *Boston & Maine R. R.* v. *Brackett*, 71 N. H. 494, the defendants owned the side track and had agreed to keep it "in suitable condition for the use of the plaintiffs' servants." Nothing so nearly approaching a warranty can be found in this case. In fact, there is nothing here which resembles a warranty. In that case the court say (*p.* 497): "The action is case for negligence. It is not assumpsit for the breach of a contract to indemnify the railroad for damages resulting to them from the use of the spur track. The only effect of the contract to keep the track in

repair and free from snow and ice, is to establish the existence of the duty, from the negligent non-performance of which the right of action is alleged to have arisen." So in this case, the action is not assumpsit for breach of a contract to indemnify the railroad for damages resulting from the use of the potato car; but the distinction between the actions of case and assumpsit, there pointed out, is here not even adverted to. The contract which, in the Brackett case, created the duty for the "negligent non-performance of which" the defendants became liable, has, in this case, become a warranty, for the breach of which the defendant is liable, entirely independent of the question whether the breach was negligent. In the Brackett case it is said: "The plaintiffs here, to recover for the injury to them resulting from the obstructed track, must establish not only that it was due to the Bracketts' negligence, but that they could not by the exercise of care have prevented the injury. . . . That Wright was able to recover against these plaintiffs without establishing their personal fault, does not relieve them from the burden of now showing their freedom from negligence contributing to the accident." This quotation shows clearly that although the duty to exercise ordinary care was upon the defendants, yet the same duty, despite that fact, continued to rest upon the plaintiffs. In the Brackett case it was held that the defendants' express agreement to keep the track in repair did not obviate the plaintiffs' duty to use due care in using it; but in this case it is held that the defendant's implied agreement (which is simply his legal duty) to use ordinary care to provide and maintain a safe stove and fire obviates the plaintiffs' duty to use due care. It seems to us that the decisions are in irreconcilable conflict, and that that in this case is wrong, because it violates the settled rule that there can be no recovery where the plaintiff could by due care have prevented the loss.

It was not determined in the Rolfes' suit that Sargent's negligence was the sole cause of the loss (*Boston & Maine R. R. v. Sargent*, 70 N. H. 299, 306); nor can that fact be determined except by a verdict finding that these plaintiffs were not negligent in failing to discover the condition of the stove and fire, and in placing the car in proximity to the storehouse. Those are questions of fact as to which, on the evidence, the opinion in this case concedes that reasonable men might differ; and that being so, the verdict rendered, which is based upon a finding of those facts against the plaintiffs, must stand, unless those facts are immaterial in this case. The fact that the plaintiffs' negligence contributed to cause the original accident has heretofore always been considered as decisive against the right to recover indemnity. *Nashua Iron and Steel Co.* v. *Railroad*, 62 N. H.

159; *Gregg* v. *Company*, 69 N. H. 247; *Boston · & Maine R. R.* v. *Sargent, supra; Boston & Maine R. R.* v. *Brackett*, 71 N. H. 494. The opinion rendered gets over the objection that A cannot recover indemnity of B where A could himself have prevented the loss by due care, by giving the plaintiffs the benefit of a warranty which never existed, and which even the opinion does not go so far as to say did exist. There is a difference between a warranty that a thing is safe and the duty to use ordinary care to make that thing safe; and we believe that this opinion is the fruit of disregarding that difference.

The decision in this case seems to be based mainly upon *Mowbray* v. *Merryweather*, [1895] 2 Q. B. Div. 640. The action in that case was "for breach of a warranty given by the defendant to the plaintiffs." *Rigby*, L. J., gives a clear statement of the ground, and the only ground, upon which the decision is placed, saying: "It seems to me that the effect of the warranty is that the defendant agrees with the plaintiffs that they may rely upon him for the sufficiency of the chain as a matter of contract, and as between him and them there was no duty whatever on their part to examine the chain to see whether it was sufficient." It seems plain that the plaintiffs were excused for their failure to exercise ordinary care by the fact that the suit was upon the defendant's warranty. Apply the rule of damages laid down by Lord *Esher* in that case, to the one at bar: Can the loss of the Rolfes' storehouse "be regarded as the natural consequence of the defendant's breach of contract, or, in other words, a consequence which might reasonably be supposed to have been within the contemplation of the parties?" It is at once seen that there are two fatal objections to the application of the English case to the present state of facts: (1) There was no contract of warranty, and this action is case and not assumpsit; (2) if this action were assumpsit, it certainly could not be said, as matter of law, that the burning of the Rolfes' storehouse "might reasonably be supposed to have been within the contemplation of the parties" when they entered into the potato contract.

The other case cited by the court as a basis for decision is *Boston Woven Hose Co.* v. *Kendall*, 178 Mass. 232. That case is like the English case, *Holmes*, C. J., saying: "The very purpose of the warranty was that the boiler should be used in the plaintiff's works with reliance upon the defendant's judgment in a matter as to which the defendants were experts and the plaintiff presumably was not." Was it the purpose of the potato contract, that the plaintiffs should use the car with reliance upon the defendant's judgment in a matter as to which the defendant was an expert and the plaintiffs presumably were not? The truth of the matter

is, that a decision is not right which is based upon a warranty when there was no warranty.

BINGHAM, J.    1. The matters in issue in the Rolfes' suit (*Rolfe* v. *Railroad*, 69 N. H. 476) were (1) the liability of Sargent for the loss occasioned the Rolfes by the destruction of their storehouse, through his operation of a portion of the railroad, and (2) the Rolfes' freedom from fault contributing to that loss.    In defence of the action, Sargent could have shown (1) that the Rolfes were guilty of contributory negligence, or (2) that he himself was free from fault, or (3) that the railroad was guilty of actual negligence which was the sole cause of the loss.    It would not have been a defence for him to have shown that actual negligence on the part of the railroad concurred with his negligence, and the question was not in fact litigated; and inasmuch as the duty which Sargent assumed of heating the potato car "was a part of the actual operation of the road," and could "not be separated from it, so far as the rights of third persons  .  .  .  [were] concerned, by any contract between the railroad and the shipper" (*Ib.* 477), it would not have been a defence for the railroad to have shown that Sargent's negligence was the sole cause of the loss, for they, as a matter of law, were jointly liable with him for his negligence, though themselves guilty of no actual negligence.

Upon all the issues which were in fact litigated, and which Sargent and the railroad could have litigated in defence of the action but did not, they are concluded by the judgment.    *MacDonald* v. *Railway*, 71 N. H. 448, 457 ; *Metcalf* v. *Gilmore*, 63 N. H. 174, 189.    Hence, as respects the destruction of the storehouse, the only question which was open for the parties to litigate, when this case was sent back for trial in the superior court, was whether the plaintiffs were in fact guilty of negligence concurring with that of Sargent to produce the loss.

2. The Rolfes' suit and the first count in this action relate to the same subject-matter—the loss occasioned the Rolfes by the destruction of the storehouse.    The only difference between that suit and the first count is that the latter presents the additional issue of the ultimate liability for that loss, as between the parties to this suit.

After the action was sent back to the superior court, the declaration was amended by filing an additional count.    The subject-matter of this count is entirely different from that of the other ; it is the loss occasioned the railroad by the destruction of the two cars—property in which they had a special interest as bailees. *Woodman* v. *Nottingham*, 49 N. H. 387, 393.    The issues here presented are (1) the liability of Sargent for the loss occasioned

the plaintiffs by the destruction of the cars, and (2) the plaintiffs' freedom from fault contributing thereto. These issues were not passed upon in the prior action. While certain evidentiary facts bearing upon these issues may be the same as those contested in the prior action, they were not themselves in issue (although controverted), within the meaning of the rule as applied in *King* v. *Chase*, 15 N. H. 9, and the numerous cases in this state in which the doctrine there announced has been approved and followed. *Hearn* v. *Railroad*, 67 N. H. 320; *Metcalf* v. *Gilmore*, 63 N. H. 174; *Littleton* v. *Richardson*, 34 N. H. 179. See, also, Ray & Walker's Citations 420. Sargent's equipment of the interior of the potato car, his management of the stove, and the communication of the fire from the stove to that car and thence to the storehouse, were not issues upon which the Rolfes proceeded, but were evidentiary facts tending to establish the liability of the defendant for the loss which the Rolfes sustained, and fall within the rule that "facts offered in evidence to establish the matter which is in issue, are not themselves in issue within the meaning of the rule, although they may be controverted on the trial." *King* v. *Chase, supra.* They stand the same as the mortgage in the above case, and were not issues upon which the action proceeded.

It follows, therefore, that the parties were not concluded by the judgment in the Rolfes' suit upon either of the above issues, and that the jury should have been instructed that the judgment was not even evidence to be considered upon the question of Sargent's liability for the loss of the cars.

3. The plaintiffs' motion for a verdict, as respects the storehouse, presents the question whether there was competent evidence from which the jury might properly find that the plaintiffs were guilty of actual negligence which contributed to its destruction. *Paphro D. Pike Co.* v. *Baty*, 69 N. H. 453, 458. Counsel for the defendant contend that the plaintiffs were actually negligent in shifting the potato car in the yard and placing it near the storehouse, without first ascertaining that the defendant had negligently equipped it with a defective stove and was negligently managing the fire; and that although the plaintiffs did not know of his negligent conduct, they might have learned of it by the exercise of ordinary care.

If, as respects the Rolfes, it might be found from the evidence that the plaintiffs were negligent in not examining the interior of the car and ascertaining that the defendant was not performing his duty, still it could not be so found as respects the defendant; for when the defendant assumed the control of the interior of the car under the shipping contract, and undertook to equip and heat it, he impliedly agreed with the plaintiffs that he would perform this

duty with reasonable care (*Boston & Maine R. R.* v. *Brackett*, 71 N. H. 494, 498), which means that he would use a suitable stove, manage it in a proper manner, and set it up so that it would withstand the ordinary movements of the car incident to its transportation in a freight train. And the plaintiffs had the right to rely upon his agreement and to understand that he would perform this duty.

Negligence is not a thing, but a relation. "The word 'negligence' implies a duty to use due diligence, and such a duty may be owed to one person and not to another." *Mowbray* v. *Merryweather*, [1895] 2 Q. B. Div. 640, 647. "If there be no duty, the question of negligence is not reached; for negligence can in law only be predicated upon a failure to use the degree of care required of one by law in the discharge of a duty imposed thereby." *Dobbins* v. *Railway*, 91 Tex. 60, 62. In order, therefore, to establish that the plaintiffs' conduct was negligent, so as to prevent a recovery in this action, it was essential that it should be made to appear that they violated some duty which they owed to the defendant. But the contract discloses the absence of a duty on the part of the plaintiffs to this defendant to investigate his management of the interior of the car, and consequently their omission to do so was not negligence and does not preclude them from recovering from him what they paid the Rolfes. "When the party who was in fault as to the person injured is without fault as to the party whose actual negligence is the cause of the injury,  .  .  . recovery over can then be had." *Boston & Maine R. R.* v. *Brackett, supra.* "In such a case the parties are not *in pari delicto* as to each other, though as to third persons either may be held liable." *Gray* v. *Company*, 114 Mass. 149, 154.

A different situation would have been presented if the plaintiffs had known of the defendant's negligent conduct, or if there was evidence from which it could have been found that they owed him a duty to know of it. But there was no evidence that the plaintiffs knew, or from which it could have been found that they owed him the duty of ascertaining, that he was negligently heating the car; or that they knew or ought to have known that the car could not be safely heated, if equipped with a suitable stove and managed with reasonable prudence. The location of the potato car near the storehouse and the second car had nothing to do with its own destruction; and in the absence of evidence that the plaintiffs knew, or as respects the defendant ought to have known, that he would negligently maintain a fire in the stove, they violated no duty which they owed to him in leaving the potato car near these properties. The evidence as to the shifting of the potato car was that the method used was such as is commonly employed; and

this being so, it was the duty of the defendant to exercise such a degree of care in heating the car as would permit a shift of this kind to be safely made. Had the evidence tended to show that the shift was made in an unusual manner, and with knowledge that the car contained a stove with a fire in it, then there would have been evidence that the plaintiffs violated a duty which they owed to the defendant; but as there was none, it could not be found that the plaintiffs were negligent in this particular.

Again, the defendant is estopped by the judgment in the Rolfes' suit from showing that he exercised due care in heating the car, and that the plaintiffs were guilty of actual negligence which was the sole cause of the destruction of the storehouse; for that issue was found against him in that suit.

The question here presented seems to have first arisen in England in 1895, in the case of *Mowbray* v. *Merryweather*, [1895] 1 Q. B. Div. 857, which was in the same year taken to the court of appeals (2 Q. B. Div. 640). The plaintiffs in that case were two stevedores, and the defendant was the owner of a steamship. The plaintiffs undertook to discharge a cargo of deals from the ship, and the defendant promised to provide all necessary and proper appliances reasonably fit for the purpose of discharging the cargo. He supplied a chain so defective that it broke while in use, and a workman of the plaintiffs was injured. The workman sued the plaintiffs, basing his action upon the defective condition of the chain—a defective condition which he alleged might have been discovered by the plaintiffs, by the exercise of reasonable care. The plaintiffs paid the workman £125 and brought their action to recover that sum from the defendant. It was admitted that the sum paid was reasonable, and that the defendant had broken his implied warranty that the chain should be reasonably fit for the purpose for which it was supplied; and the plaintiffs admitted that they might, by the exercise of reasonable care, have discovered the defect in the chain. It was contended by the defendant that the damage to the workman was caused by the plaintiffs' own want of care, and could not be imputed to the defendant as the natural consequence of the breach of warranty. On the other hand, the plaintiffs contended that they had a right to rely upon the defendant's warranty; and that as between him and them the cause of action was complete, and the negligence of which they had been guilty,—the failure to carefully examine and test the chain,—was really due to the reliance they placed on the defendant's warranty. It was held in the lower court that "the breach of warranty upon which the plaintiffs relied, and as far as the defendant is concerned had the right to rely, remains, and is the efficient cause of the subsequent mischief," and

that the injury was "a natural consequence of the breach of warranty." Upon appeal, the decision of the lower court was affirmed. Lord *Esher*, M. R., among other things said : "The plaintiffs owed no duty to the defendant to examine the chain before allowing it to be used by their workman. The only duty which they owed in that respect was to the workman." *Rigby*, L. J., said : "There was no want of due diligence as between the plaintiffs and the defendant, because . . . the warranty means that, as between him and the plaintiffs, they may rely on the warranty."

In *Boston Woven Hose Co.* v. *Kendall*, 178 Mass. 232, the defendants undertook to furnish the plaintiffs with a boiler that would withstand a pressure of one hundred pounds. It failed to withstand a less pressure, because of a defect which the plaintiffs could have discovered by investigation in the exercise of ordinary care, and caused damage to the plaintiffs' servants. *Holmes*, C. J., said : "The fact that the reliance [upon the defendants' undertaking] was not justified as toward the men does not do away with the fact that the defendants invited it with notice of what might be the consequences if it should be misplaced, and there is no policy of the law opposed to their being held to make their representations good."

The principle involved in these cases is not different from that applied where an agent, acting in good faith and in obedience to his principal's orders, does an act which, if the principal had authority to authorize it, would have been lawful ; but not possessing authority, the agent is rendered liable in damages for a tort. In these cases it is held that "there is an implied obligation on the part of the principal to indemnify an innocent agent for obeying his orders," and that he can recover indemnity from his principal. *Gower* v. *Emery*, 18 Me. 79 ; *Lowell* v. *Railroad*, 23 Pick. 24, 33, 34 ; *Howe* v. *Railroad*, 37 N. Y. 297 ; *Moore* v. *Appleton*, 26 Ala. 633, 637 ; *Vandiver* v. *Pollak*, 107 Ala. 547 ; Sto. Ag., ss. 339, 340 ; 7 Am. & Eng. Enc. Law (2d ed.) 365.

Our conclusion is, that as the plaintiffs violated no duty which they owed to the defendant in moving and placing the car where they did, without examining to see how he was heating the car, it could not be found on the evidence that they were not in the exercise of ordinary care, and the verdict as to the first count must be set aside.

In the previous trial (*Boston & Maine R. R.* v. *Sargent*, 70 N. H. 299), the only evidence submitted was the judgment in the Rolfes' suit and an admission of the defendant's counsel tending to show that the plaintiffs were in the exercise of care ; and because of the latter piece of evidence, the verdict ordered for the defendant was set aside. But in the present trial, evidence fully

disclosing the plaintiffs' conduct in the management of the cars was presented; and as we have held that it would not support the verdict of the jury in favor of the defendant, a verdict should have been directed for the plaintiffs. *State* v. *Harrington*, 69 N. H. 496.

With reference to the second count, the instructions to the jury upon the question of the plaintiffs' exercise of care were general —that the railroad could not recover if its negligence contributed to the destruction of the cars. An exception was taken to this instruction, and a charge requested to the effect that the railroad could not be found to be negligent for not investigating the interior of the potato car before leaving the car where it did, unless the jury should find that the railroad or its employees knew the stove or the fire in it was unsafe, or that there was something in the appearance of the car which indicated that an unsafe fire was being maintained in it. This instruction should have been given for the reasons above stated, and the verdict as to this count is also set aside.

4. The burden of proof upon all the issues raised by both counts was upon the plaintiffs. The fact that the defendant had the exclusive control of the interior of the potato car did not alter the situation in this respect. *Hart* v. *Lockwood*, 66 N. H. 541, 542.

In view of the conclusions reached, it is unnecessary to consider the other questions in the case.

*Verdict set aside as to the first count, and judgment for the plaintiffs: new trial granted upon the second count.*

PARSONS, C. J., and WALKER, J., did not sit: the others concurred.