Merrimack, ⟩
June 6, 1905. ⟨

MINOT, *Adm'r,* *v.* BOSTON & MAINE RAILROAD.

The fact that a pedestrian failed to take any precaution before attempting to cross a railroad siding does not preclude a finding of due care on his part, if he was familiar with the operation of trains at that point and had reasonable ground for believing that the track would not be used for the passage of cars for several hours.

Where the conduct of a person killed while crossing a railroad is fully disclosed, evidence of his habitual care in similar situations is not admissible.

On the question whether railroad employees were guilty of negligence in running cars over a foot-path in general use, without taking any precaution for the protection of pedestrians, a rule of the corporation requiring the locomotive bell to be rung before a train is started is competent evidence.

CASE, for negligently running upon the plaintiff's intestate at Cherry Mountain station, August 7, 1902. Transferred from the April term, 1904, of the superior court by *Peaslee,* J. The plaintiff's evidence tended to prove the following facts:

The railroad tracks at Cherry Mountain run east and west, the main line being south of the station. West of the station, the Jefferson Hill branch leaves the main line and runs north of the station. Northerly from the station, a siding leaves the branch and runs westerly about parallel with and directly northerly of that line. The siding is on a slight grade descending toward the station, and is used for freight cars in connection with the business of the station and the branch. The station is a small building surrounded by a large platform which is but little above the level of the rails. Westerly from the station, and just east of the westerly end of the platform, a foot-path crosses the southerly tracks, the platform, and the northerly tracks which make up the Jeffer-

son Hill branch and siding thereto. On the southerly side of the tracks, within the defendants' right of way, a flight of wooden steps leads down from the path on the higher land on the south of the railroad to the level of the tracks, the path and steps having been used by the public and the defendants' employees for many years.

It was the usual, but not invariable, custom for the train due from Jefferson Hill shortly before one o'clock in the afternoon to discharge passengers at Cherry Mountain station, run upon the Jefferson Hill siding to a point westerly of the station, and wait there until four or five o'clock. Sometimes the locomotive was turned upon a Y to the east of the station before returning to Jefferson Hill or going upon the siding, and at other times it was used for shifting cars in that vicinity. On the day of the accident the train was run upon the siding, where it stopped long enough to permit coupling the locomotive to a carload of ties, and was then backed out, a passenger car being ahead, the locomotive in the center, and the car loaded with ties in the rear. There was no one in the passenger car, and no warning was given as the train backed down the siding to the Jefferson Hill branch. The train crew consisted of conductor, engineer, fireman, and brakeman. The brakeman made the coupling at the forward end of the locomotive, and then climbed upon the pilot or upon the car of ties, where he remained. The engineer and fireman were in the locomotive cab. The conductor was inside the station when the coupling was made and while the train was backed down from the siding toward the branch.

Catherine Fitzgerald, the plaintiff's intestate, was sixty-three years old and in the full possession of her faculties. She had lived south of the tracks near the Cherry Mountain station for some years, was accustomed to use the foot-path across the railroad, and habitually observed the methods of moving trains at that point. At about half-past eleven o'clock in the forenoon of the day of the accident, a neighbor requested her to come to a house located north of the track, and shortly after noon she sent word that she would go as soon as the Jefferson Hill train had run upon the siding out of the way. On previous occasions she had used the path to cross the tracks when the Jefferson Hill train was standing on the siding, but it did not appear that such occasions were at the time of day when she attempted to cross and was killed. About one o'clock she was seen to walk down the path to the tracks. The witness who observed her was east of the station, and his view of her was interrupted until she was part way across the platform. From the point on the platform where she next came into view, she walked, without stopping, along the path, across the Jefferson

Hill track, and upon the siding, where she was run over and killed. The weather was fair and warm, and there was nothing to obstruct her view of the train. The train moved back with little noise, at a rate of from four to six miles an hour, and was some thirty or forty feet from the deceased when she stepped from the platform upon the Jefferson Hill track. From the time she left the house until she was struck, there was no point or moment when she could not see the train or readily observe whether it was at rest or in motion.

The following rules of the railroad were put in evidence:

" Rule 30. The engine bell must be rung when an engine is about to move.

" Rule 85. A train must not start without a signal from its conductor. (a) At stations the starting signal must be given from the station platform. (b) When a passenger train stops short of, or runs by, a station, the engineman must not move the train in either direction without proper signal from the conductor.

" Rule 669. All freight or mixed trains must have a good brake on the rear car while on the road, and a trainman must be kept upon that car while the train is in motion, particularly on all ascending or descending grades. It must be clearly understood that this applies to trains shifting or moving in station yards where there is a grade, and in no such case will the rear car of the train be moved at all unless there is a brakeman upon it. The leaving of the brake up must not be considered a sufficient means of holding the rear when it is necessary to move it even for a short distance in doing station work."

The plaintiff excepted to the exclusion of evidence of the decedent's habitual care when crossing railroad tracks and of her fear of trains, and to the order of nonsuit at the close of his evidence. The defendants excepted to the admission of the rules.

*Sargent, Remick & Niles*, for the plaintiff.

*Mitchell & Foster* and *Streeter & Hollis*, for the defendants.

PARSONS, C. J.   The conduct of the deceased, from the time when she came in sight upon the station platform until she walked directly in front of the car and was killed, is fully disclosed by the evidence. During this time she did not look toward the car and took no precaution to ascertain if there was danger in stepping upon the track. Does the evidence of her failure to take any precautions immediately before placing herself in what proved to be a place of great danger preclude a finding that she acted with due care?

"Precaution is a duty only so far as there is reason for apprehension." *Shea* v. *Railroad*, 69 N. H. 361, 364. If she knew or ought to have known, as did the plaintiff in *Gahagan* v. *Railroad*, 70 N. H. 441, 445, that "trains and shifting engines were frequently passing" over the track, there is no escape from the conclusions of that case. If, on the other hand, the fact was that the track would not for several hours be used for the passage of engines or cars, she was under no obligation to guard herself against a non-existent danger. Her attention might properly in such circumstances be all given to the obstacles to pedestrianism presented by the railroad constructions in her path. In the one case there would be no evidence of care; in the other there would be nothing in her conduct to which negligence could be imputed. *Hutchins* v. *Macomber*, 68 N. H. 473, 474.

The case states that it was the usual, but not invariable, custom for the train in question to draw upon the siding and wait there several hours. Sometimes a different course was pursued. It is not quite clear from the case whether, when the engine was to be used for shifting, the train was drawn on to the siding. The evidence reported is not inconsistent with a finding that when the engine and car were drawn upon the siding, as in this instance, the universal practice hitherto had been for the train to remain there without moving for several hours. If this be so, there was ample evidence that her conduct was not careless. If, on the contrary, the engine and car were occasionally backed down on the siding, as on this occasion, the question is not so clear; but the lack of absolute certainty in fact would not decide it. If the deceased believed that the car would not be moved for several hours, her conduct at the time is to be measured by that of a person of ordinary prudence entertaining the same belief with the same certainty. Whether she was careful or negligent would be determined by the consideration whether such belief was reasonable or not. Whether a prudent person would understand from the course of business that there was at this time no such danger of the car backing down the siding as to require precaution to avoid injury thereby, is a question upon which the evidence is not so conclusive that some reasonable men might not decide it in the affirmative, as the case is presented. If the deceased entertained such belief as a person of ordinary prudence would as to the danger before her, and acted as such prudent person would act, her conduct was not negligent.

Evidence of the deceased's habit of care when crossing railroad tracks, and of her fear of trains, was excluded subject to exception. Such evidence is properly excluded when the conduct of the party is fully disclosed, but is admissible in other cases as hav-

ing some tendency to show the exercise of care upon the particular occasion. *Tucker* v. *Railroad, ante, p.* 132. The evidence therefore was not competent in this case to prove care on her part from the time she was seen upon the station platform until she was killed. For a part of the time after she entered upon the railroad she was concealed by the station building from the witness who testified as to her conduct. If it were not conceded that she understood, when she began to cross, that the train had gone upon the siding, the evidence would have some tendency to establish that she looked and ascertained that fact during the time as to which her action is not disclosed by the evidence. This fact appears to have been conceded, and no harm was done by the exclusion of the evidence. Whether if she had looked she would have seen the brakeman making the hitch to the loaded car, and the inferences to be drawn therefrom by her and the jury, are not questions of law.

The path crossing the tracks westerly of the station and the steps leading down to their level, with the fact that the path and steps had been used by the public and the defendants' employees for many years, were evidence from which it might be found that the defendants should have anticipated that some one of the public or of their employees might be on the path at the place over which they were about to move the train. Reasonable men might also find that, having reason to anticipate a human being might be in a postion to be seriously injured by the action contemplated, men of ordinary prudence, having regard to their general obligation to so conduct their lawful business as not to injure others, would not set in motion forces which might have that result, without taking some precautions to prevent it. This would be true, whether the persons who might be injured were in legal definition trespassers, licensees, or invitees. *Mitchell* v. *Railroad,* 68 N. H. 96; *Shea* v. *Railroad,* 69 N. H, 361; *Davis* v. *Railroad,* 70 N. H. 519; *Myers* v. *Railroad,* 72 N. H. 175. The evidence was that no precautions whatever were taken. The entire absence of care is at least evidence of negligence. The fact that usually the train, after going upon the siding, remained there several hours without moving furnished an additional reason for the exercise of care in taking unusual, and hence probably unexpected, action. The rule requiring the bell to be rung when an engine is about to move is evidence of a precaution which prudent men would take in all cases in operating such a machine.

Whether rules 85 and 669, also put in evidence, are material upon the question of the care exercised by the defendants' employees in the management of the passenger car, engine, and freight car, would depend upon the danger the rules were intended to

avoid, and upon whether this combination was a passenger, freight, or mixed train, or a train of some description, within the meaning of the rules. As the case stands, these rules do not appear to be material. Whether they should be admitted upon another trial may depend upon evidence not now before us. There was other competent evidence of the defendants' fault, and the case should have been submitted to the jury.

<em>Exceptions sustained: new trial granted.</em>

All concurred.