Merrimack, }
May 7, 1907. }

## MINOT, *Adm'r*, v. BOSTON & MAINE RAILROAD.

A verdict cannot be ordered for the defendants in an action for negligence, on the ground of demonstrated falsity of the testimony adduced by the plaintiff, unless the evidence in behalf of the defendants is so certain and conclusive that reasonable men, upon a consideration of all the proof, must unanimously decide the issue adversely to the plaintiff.

Requested instructions are properly denied if they give undue prominence to portions of the testimony, if they are argumentative, or if they divert attention from evidence in the case and the conclusions reasonably to be drawn therefrom.

Where the customary movement of a railroad train during a certain season is a material question, evidence as to its movements for five years prior thereto is relevant as matter of law; but whether in such case the testimony should be limited to a briefer period, is a question determinable by the trial court.

CASE, for negligently causing the death of the plaintiff's intestate, Catherine Fitzgerald. Trial by jury and verdict for the plaintiff. The action has been before the court upon a former transfer. See 73 N. H. 317. Transferred from the October term, 1906, of the superior court by *Pike*, J.

The decedent, a woman sixty-three years old and in full possession of her faculties, was run over and killed about one o'clock in the afternoon of August 7, 1902, while crossing the tracks in the defendants' yard at Cherry Mountain, by a train which was backing over a siding. The passenger station at Cherry Mountain is located northerly of the defendants' main line running from Whitefield Junction in an easterly direction to Berlin, in the angle formed by this line and their branch line running from it in a northeasterly and northerly direction to Jefferson Hill. The station is surrounded by a platform elevated slightly above the level of the rails and extending to the main track on the south, the branch track on the north, and nearly to the junction of the two tracks on the west. A side track runs from a point in the branch line north of the station in a westerly direction, to a point in the main line 1,000 to 1,200 feet distant, with a slightly descending grade toward the station. There are side tracks southerly of and connected with the main line. A foot-path leads from a point southerly of all the tracks, in a northerly direction across the tracks and the platform westerly of the station, to a point northerly of the branch siding.

The plaintiff's testimony tended to prove the following additional facts: The foot-path had been used by the public and the defendants' employees for many years. The decedent resided some 200 feet southerly of the Cherry Mountain station, and habitually observed the movements of trains there. She was accustomed to use the foot-path, and had used it on previous occasions when the Jefferson Hill train stood on the branch siding. A passenger train was due to arrive at the station from Jefferson Hill ten minutes before one o'clock in the afternoon of each week day. This train, consisting of a locomotive numbered 807 and a combination passenger and baggage car, customarily pulled onto the branch siding after its passengers had alighted, and remained there until some time between four and five o'clock, when it returned to Jefferson Hill by backing up the branch line. The train or its locomotive did no shifting or other service in the meantime. Five witnesses produced by the plaintiff testified, in substance, to these facts, representing that they had opportunities for observing them. One of them testified that before returning to Jefferson Hill a Pullman car was added to the train. On the day of the accident, the decedent promised to go to the house of a neighbor residing northerly of the branch siding as soon as the Jefferson Hill train had run upon the siding out of the way. The train came in a little before one o'clock. After its passengers had alighted at the station it backed up the branch line and pulled in on the branch siding, where it stopped long enough to permit the coupling of the forward end of the locomotive to a freight car loaded with ties there standing and the releasing of the car brake, and then it backed down the siding, the combination car being ahead, the locomotive next, and the freight car in the rear. No warning was given before or as the train began to back, and there was no one upon the combination car. The decedent started from her house about one o'clock and walked over the foot-path toward the neighbor's house. She walked from a point on the platform to the branch siding without stopping or looking to the right or left, and was there struck by the backing train and was killed. When she stepped from the platform the train was thirty-five to forty-five feet distant. It began to back about that time, and moved with little noise at the rate of four to six miles an hour. There was no time after the decedent left the house when she could not see the train and observe whether it was at rest or in motion. One of the defendants' rules required all trains and engines at that station to run "very carefully and under control within yard limits." Another rule required the engine bell to be rung when the engine was about to move.

The defendants introduced in evidence their train dispatcher's

orders relating to the movements of locomotive 807 between June 24 and August 7, 1902, during the hours of the day between one and five o'clock in the afternoon, the train sheets kept in the regular course of business, showing such movements, and the record of the movements made by the conductor as they occurred. It appeared from these orders, etc., that the locomotive was engaged in service away from the Cherry Mountain station during these hours, from half an hour to an hour on fifteen days, from one to two hours on six days, and from two to three hours on six days,— leaving the station between one o'clock and twenty minutes past one on thirteen days, between twenty minutes past one and fifty minutes past one on six days, and later than two o'clock on the other days. The defendants also produced as witnesses the trainmen of the Jefferson Hill train and the station agent at Cherry Mountain, whose testimony tended to prove the following facts: Locomotive 807 did more or less shifting of cars in the yard at Cherry Mountain. It never went on the branch siding to remain until after it had done its extra work and shifting. Whenever the combination car was set on the branch siding, a passenger car was with it. These cars were sometimes placed on this siding and sometimes on a siding south of the main line. They and the locomotive were placed and remained on the branch siding a good many times during the summer of 1902, both on days when the locomotive did extra work and when it did none. They were usually placed on that siding when no cars were in the way, and were backed onto it from its westerly end. The locomotive and car never backed up the branch line and pulled in on the siding from its easterly end before the day of the accident. Whether the cars and locomotive were set upon this siding during the hours of the day above mentioned so frequently that it could properly be said they were set there customarily, was doubtful. As soon as the locomotive was coupled to the freight car on the day of the accident, the fireman looked back and saw the decedent standing about midway of the station platform, facing across the Jefferson Hill branch and siding. Upon starting, he struck the bell and turned around toward the freight car to see if it was coming, and did not look again before the decedent was struck. The engineer was on the side of the locomotive farthest from the decedent, and did not see her. The train backed 100 feet or more before striking the decedent, at such rate of speed that it could have been stopped within twenty feet. It was twenty to thirty feet from the middle of the station platform to the place of collision. It appeared as if the decedent did not see the train and was not conscious of its approach. When she stepped on the siding, she turned so as to face from the train. Some portions of the defend-

ants' other evidence conflicted more or less with the plaintiff's evidence.

At the close of the testimony the defendants moved for an order directing a verdict in their favor. The motion was denied, and they excepted. They raised the same question by exceptions to the denial of their requests for similar instructions to the jury in the charge. They also excepted to the denial of their requests for other instructions, and to certain rulings relating to the testimony and examination of witnesses. These exceptions and the facts pertaining to them appear in the opinion.

*Sargent, Remick & Niles,* for the plaintiff.

*Mitchell & Foster* and *Streeter & Hollis,* for the defendants.

CHASE, J. The defendants, in their argument in support of the exception to the denial of their motion for an order directing a verdict in their favor, place much reliance upon the character and weight, as testimony, of the orders, train sheets, and records put in evidence by them, relating to the movements of the locomotive of the Jefferson Hill train. They say that this testimony demonstrates the falsity of the plaintiff's testimony relating to the customary movements and location of the train during the afternoon hours, and consequently the falsity of the proposition that the decedent was exercising ordinary care in attempting to cross the tracks as she did. In their brief, they freely admit that "if . . . the testimony of the plaintiff's witnesses were opposed merely by the testimony of the defendants' trainmen, the conflict would be for the jury to determine "; that it would then be " the common case of one set of men contradicting another, and, so far as the court could see, either might be right, and reasonable minds could conceivably differ as to which was right." In the consideration which they have given to these orders, etc., they seem to have overlooked the fact that the orders, etc., specifically relate to the locomotive alone. Assuming, for the purpose of the argument, that this testimony, by reason of its character, inherently and conclusively implies verity, it proves only that the locomotive moved about as shown by it. It does not prove that the combination car, alone or in connection with another car, was taken with the locomotive while performing outside service, or that it did not customarily stand upon the branch siding during the afternoons. It does not prove that the locomotive was used in shifting cars in the yard at Cherry Mountain after its arrival there. Indeed, the testimony introduced by the defendants themselves tended to prove that the cars and the locomotive, one or all of them, so fre-

quently stood upon this siding during portions of the afternoons. that it was doubtful whether it could not properly be said that they customarily stood there. The defendants were at liberty to argue to the jury that they had shown by conclusive testimony that the plaintiff's witnesses were not entitled to credit; but the jury were not obliged to find, because the witnesses were in error as to some particulars, that they were false or in error as to all. They were at liberty to find, if upon a consideration of all the testimony such appeared to them to be the fact, that the plaintiff's witnesses were mistaken or misrecollected as to some of the movements of the locomotive, but were entitled to credit as to other matters. They might reasonably believe that there would be more or less unintentional errors in the testimony of witnesses— whether called by the one side or the other—given after the lapse of four years from the time when the transactions occurred as to which they testified. Furthermore, the question of the decedent's care did not necessarily depend upon the fact that the Jefferson Hill train, without change in its make-up, pulled onto the branch siding immediately after its passengers alighted, and stayed there during the remainder of the afternoon. If the train, with or without the additional passenger car, was frequently placed on the siding at some time during the afternoon and usually remained there after being so placed until four or five o'clock, a jury might reasonably find that the decedent, familiar with such custom, would not be wanting in due care if she assumed that the train which caused her death, having gone onto the siding, would not back out immediately. *State* v. *Railroad*, 52 N. H. 528. As was said in *Smith* v. *Railroad*, 70 N. H. 53, 85, " familiarity with the manner in which the railroad is operated and the times when trains pass over it might excuse a traveler, under some circumstances, from looking or listening for a train when about to pass over the crossing."

The plaintiff's testimony on the question of the decedent's care was certainly as full and definite as it was at the former trial, which, it has been decided, was sufficient to require the submission of the question to a jury. *Minot* v. *Railroad*, 73 N. H. 317. The defendants' testimony, while conflicting with the plaintiff's in some particulars, tended to confirm it in other particulars. There was no such certain and conclusive verity and preponderance in it as would enable one to say with confidence that reasonable and impartial men, upon considering and weighing it in connection with the plaintiff's testimony, would not differ in their judgments, but must unanimously come to the conclusion that the decedent's death was due, in part at least, to her own want of due care.

*Deschenes* v. *Railroad*, 69 N. H. 285; *McGill* v. *Granite Co.*, 70 N. H. 125, 129.

The defendants cite *Gahagan* v. *Railroad*, 70 N. H. 441, and urge the proposition that this case is on all fours with it. That case was taken from the jury "because upon the evidence there is no disputed question of fact to be determined." *Ib.* 446. Gahagan "walked upon a railroad crossing within a railroad yard, over which he knew trains and shifting engines were frequently passing." *Ib.* 445. According to the plaintiff's evidence in this case, Mrs. Fitzgerald's knowledge as to the use of the defendants' railroad yard was that no shifting was done in it during the afternoon hours; or, in other words, the fact within her knowledge was the direct opposite of that which was within Gahagan's knowledge. This case also differs essentially from *State* v. *Harrington*, 69 N. H. 496, and *Boston & Maine R. R.* v. *Sargent*, 72 N. H. 455, cited by the defendants. In the first case there was no conflict in the testimony upon the point as to which the verdict was ordered; and in the second case there was an estoppel arising from a prior judgment which entitled the plaintiffs, as a matter of law, to a verdict upon the point as to which it was ordered. Nor does *Arnold* v. *Prout*, 51 N. H. 587, support the defendants' position. In that case, the court, after noting that there was no evidence tending to prove that the delivery of the ale in suit was to be in this state under the contract for its sale,— the point on which the verdict was ordered,—said : "The counsel for the defendant are right in their position that if there was any evidence, though slight, tending to rebut the position that the delivery was in New York, the question ought to have been submitted to the jury." The defendants' exceptions to the denial of their motion for an order directing a verdict in their favor and to the denial of their request for similar instructions to the jury stand no better than their exception to the denial of their motion for a nonsuit upon the former transfer of the case, and, like that exception, they must be overruled. *Minot* v. *Railroad*, 73 N. H. 317.

The defendants also excepted to the denial of their requests for certain other instructions to the jury. These requests were made in several different forms, but the following may be taken as a sample of one class of them: "Upon the undisputed evidence, Mrs. Fitzgerald was familiar with the course of business at Cherry Mountain station, and she walked from the platform onto the Hill siding without taking any precautions to learn whether the train was moving. In so doing she was guilty of negligence which prevents a recovery, unless an ordinarily prudent person, familiar with the course of business at that station, would have understood

that there was no danger of this engine and car backing at the time she undertook to cross. A person of ordinary prudence could not so understand, unless it was the usual practice for the engine and combination car to pull onto the Hill siding at this time of day and remain there for a considerable time. Unless, therefore, you find that it was the usual practice for the engine and combination car to pull onto this particular siding when they arrived from the Hill at 12 : 50 and had discharged the passengers, and to remain upon this siding for a considerable time before again moving, your verdict must be for the defendant railroad." In determining the question of the decedent's care, an important fact to be taken into consideration was the state or character of her knowledge as to the movements of the Jefferson Hill train, etc., in the Cherry Mountain yard. Would her habitual observations of these movements naturally produce (1) the impression upon her mind that the locomotive and car of the train customarily pulled onto the branch siding immediately after its passengers had alighted, and remained there until late in the afternoon ; or (2) the impression that whenever in the afternoon they pulled in there they usually remained until four or five o'clock ; or (3) the impression that the locomotive alone, or in connection with the car, was usually engaged for a time immediately after its arrival at the station in shifting cars about the yard, including the branch siding, and did not go upon the siding to remain, if at all, until later in the afternoon ; or (4) the impression that whenever the locomotive was about to move in shifting cars or other service its bell was rung, and it moved very carefully and under control ? Or, summarizing these matters in a more general form, was the decedent's knowledge such as reasonably to induce a belief that the locomotive and car pulled onto the siding to remain at this particular time, or a belief that it was engaged in shifting cars or other service ? If it was such as reasonably to induce the former belief, the decedent might well be regarded as in the exercise of due care in going upon the siding as she did ; but if it was such as reasonably to induce the latter belief, the jury would probably have no difficulty in finding that her conduct was wanting in the element of due care, provided they found that the bell was rung before the locomotive started. The defendants' request for instructions above quoted, besides being objectionable because it gives undue prominence to portions of the testimony and is argumentative (*Spalding* v. *Brooks*, 58 N. H. 224 ; *Phœnix etc. Co.* v. *Clark*, 59 N. H. 345 ; *Fogg* v. *Moulton*, 59 N. H. 499 ; *Rublee* v. *Belmont*, 62 N. H. 365 ; *Davis* v. *Railroad*, 68 N. H. 247, 252), is objectionable because it ignores, or, rather, decidedly diverts attention from the proposition that if the decedent's knowledge was such as is

referred to in the first (1) or second (2) of the alternatives above enumerated, and the bell was not rung as the locomotive was about to start, she might reasonably be regarded as without fault. This request and the others of the same class were properly denied.

Another of the defendants' exceptions was to the denial of their request for an instruction to the jury as follows: "If you find that the course of business was such that the movements of the engine and car, at the time of day when the accident happened, were variable and uncertain, Mrs. Fitzgerald was not justified in stepping upon the track without looking to see whether they were in motion, and the plaintiff cannot recover." An instruction of this kind would be faulty, because it would divert the jury's attention from the testimony relating to the defendants' rules as to the giving of a warning when the locomotive was about to move and its control while in motion, and the probable knowledge acquired by the decedent regarding these matters from her habitual observations. *Davis* v. *Railroad*, 68 N. H. 247. The request for this instruction was also properly denied.

The request for an instruction that the decedent was a trespasser and the plaintiff was not entitled to a verdict unless her peril was discovered by the defendants' employees in season to prevent injury to her by an exercise of ordinary care, was properly denied, for the reasons stated in the former opinion in this case. *Minot* v. *Railroad*, 73 N. H. 317, 321.

One of the witnesses called by the plaintiff was allowed to testify, subject to the defendants' exception, that the one o'clock Jefferson Hill train, for four or five years prior to the summer of 1902, was handled just the same as it was that summer. The defendants say this testimony was irrelevant and calculated to mislead the jury. It had the same relevancy to the questions on trial that the testimony had relating to the movements of the train during the summer of 1902. The uniformity of the custom for four or five years would be likely to impress the decedent, who resided near the station for some years and habitually observed the movements. It had a natural tendency to make her knowledge definite and certain. Whether the testimony should have been limited to a briefer period than four or five years was a question that was within the discretion of the court to determine, and is not open to consideration here.

The defendants' exception to the declination of the court to limit the testimony regarding the custom as to the movements of the Jefferson Hill train to the time of day immediately following its arrival at Cherry Mountain is also overruled, for the reasons above stated.

The plaintiff, upon the cross-examination of the conductor and the engineer of the Jefferson Hill train, attempted to show that certain of the defendants' rules applied to the situation as the train backed down the siding, and required certain precautions. In doing so, he read the rules to the witnesses in the hearing of the jury and asked questions concerning their application. The defendants excepted to this course. It was a dangerous course for the plaintiff to take, but it does not appear that it could possibly result in any harm to the defendants in this instance. As to two of the rules read, the witness testified, in substance, that they had no application to the situation of the backing train, and neither of them was offered in evidence. One of them was, in substance, the same as another rule that was put in evidence by the plaintiff and obviously applied to the situation, and the other was entirely immaterial and harmless. A third one was put in evidence without objection.

*Exceptions overruled.*

All concurred.